Nancy Navlyt, a Minor, Jo Ann Navlyt, a Minor, and Donald Navlyt, a Minor, by Mary Navlyt, Their Mother and Next Friend, and Mary Navlyt, Individually, Plaintiffs-Appellants, v. Paul T. Kalinich, Individually and d/b/a West Cook County Builders, Defendant-Appellee.

Gen. No. 69–142.

Second District.

July 13, 1970.

James P. Chapman, of Chicago, for appellants.

John W. Gilligan and Robert L. Williams, of Chicago, for appellee.

MR. JUSTICE SEIDENFELD 

Plaintiffs appeal from a final judgment dismissing a complaint brought under the Illinois Structural Work Act (Ill Rev Stats 1967, c 48, §§ 60, 69).[1]

The narrowly defined issue is whether the decedent, killed by the collapse of a trench, in which he was installing sewer tiles in connection with town house units under construction by defendant, was working on or about

---

[1] The provisions of the act particularly relied upon include:

Section 60 (Ill Rev Stats 1967, c 48, § 60):

"That all scaffolds, hoists, cranes, stays, ladders, supports, or other mechanical contrivances, erected or constructed by any person, firm or corporation in this State for the use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, or other structure, shall be erected and constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon, or passing under or by the same, and in such manner as to prevent the falling of any material that may be used or deposited thereon. . . ."

Section 69 (Ill Rev Stats 1967, c 48, § 69):

"Any owner, contractor, sub-contractor, foreman or other person having charge of the erection, construction, repairing, alteration, removal or painting of any building, bridge, viaduct or other structure within the provisions of this act, shall comply with all the terms thereof, . . . ."

a "house, building . . . or other structure" within the meaning of the act.

It is conceded that no "scaffold, hoist, crane, stay, ladder, support, or other mechanical contrivance" as described in section 60, was provided.

The decedent was standing on the earth bottom of the trench, which was 10 to 12 feet deep, and was in the process of installing sewer tile, when a portion of the wall of the trench collapsed upon him.

Plaintiffs urge that the Structural Work Act is to be liberally construed to effectuate its broad purpose of providing workmen in extrahazardous operations with a safe place to work; and that the concept of a "structure," as that term is used in the act and as liberally construed, embraces the sewer system on which the plaintiff was working, either by itself or considered as an integral part of the buildings being erected on the site.

Defendant argues that a trench excavation is not a "structure" within the act and, therefore, the court properly found that no cause of action had been stated.

■ The tendency of courts to provide a liberal construction of the Structural Work Act to attain the purpose of providing workmen in extrahazardous operations with a safe place to work is clearly indicated by the cases. See Louis v. Barenfanger, 39 Ill2d 445, 448, 236 NE2d 724 (1968); Burgh v. Crane Const. Co., Inc., 102 Ill App2d 188, 193, 243 NE2d 590 (1968).

■ Under the particular facts before us, this appears to be a case of first impression in Illinois. In the great majority of the Illinois cases which have been cited under the Structural Work Act, whether a workman has been injured while employed on a structure has not been an issue. A substantial number of the cases involve falls from a place which is intended to support a worker while performing his duties, and deal with the definition of scaffolds rather than structures. (E. g., Louis v. Barenfanger, supra, and cases cited therein at pages

293

449, 450.) More relevant is the holding that shoring or supports involved in construction work which are inadequate to protect a workman from the results of an overhead collapse may bring a case within the act. See Miller v. DeWitt, 59 Ill App2d 38, 127, 208 NE2d 249 (1965) (affirmed in 37 Ill2d 273, 226 NE2d 630 (1967)).

Defendant has principally relied upon Bradley v. Metropolitan Sanitary Dist. of Greater Chicago, 56 Ill App 2d 482, 206 NE2d 276 (1965) to support the position that the decedent was not working on a structure within the act. In Bradley, a workman, while using an air spade to excavate for a drop manhole, was killed as the result of a cave-in in the excavation. The court recognized that the act included a purpose "to protect persons working on scaffolds as well as those passing under them . . ." (page 485), to prevent the falling of material, but concluded that (page 487):

> "However, we find that the Structural Work Act does not 'require' supports or stays to be used in excavation work as claimed by plaintiffs; that a drop manhole is not a 'structure' within the Act; and that the accident was not caused by the insufficiency of a 'scaffold, support or stay' because none was used."

That portion of the rationale of the Bradley opinion that scaffolding or supports are not required under the Structural Work Act, but only if they are used must they be safe, appears to have been rejected by the majority opinion in Louis v. Barenfanger, supra, in its holding (page 449):

> ". . . that the failure to provide scaffolding [2] can be the basis of a cause of action under the Structural Work Act."

---

[2] Here, supports under section 60, supra.

■ We do not feel that we are compelled to decide the instant case upon a question whether the ditch or excavation which collapsed was itself a "structure." The plaintiffs' decedent was working upon a sewer system which we clearly conceive to be a "structure" under the Structural Work Act either considered by itself or as an integral part of the buildings being erected on a construction site.

The title of the Structural Work Act in itself indicates that the protection of the act is not limited to work directly upon a building or structure:

> "An Act providing for the protection and safety of persons *in and about* the construction, repairing, alteration, or removal of buildings, bridges, viaducts, and other structures, and to provide for the enforcement thereof." (Emphasis added.)

In Crafton v. Lester B. Knight & Associates, 114 Ill App2d 52, 57, 252 NE2d 383 (1969), the court held that the Structural Work Act applied to the construction site upon which a tractor and boom were being used to move steel from a storage yard to the construction area.

■ ■ We recognize limitations in importing definitions from other statutes, since the context in which a term is used obviously bears on its intended meaning. However, in the context of a liberal construction universally given to the Structural Work Act, we do not conceive that the word "structure" was intended to have less than its commonly accepted broad meaning. In Brown v. City of Decatur, 188 Ill App 147, 151 (1914), the maintaining of water mains in connection with a waterworks plant has been held to be the maintenance of a "structure" under the Illinois Workmen's Compensation Act (defining a "structure" as "anything that is built or constructed"). In Armenti v. Brooklyn Union Gas Co., 157 App Div 276, 142 NYS 420, 425 (1913),

under a statute similar at the time to the present Illinois Structural Work Act, a plaintiff, working on a concrete sewer located beneath the surface of the street, and injured when the sheathing, shoring and bracing used to hold back the earth gave way, was held to be covered by the act. The trial court below differentiated the Armenti case from the instant case because of the size of the particular sewer structure, but we do not deem that the size of a system is a relevant criterion for the classification of what is a structure. See also Stevens v. Stanton Const. Co., 153 App Div 82, 137 NYS 1024, 1025–6 (1912).

The trial court in a memorandum opinion filed with the record carefully reviewed the cases and concluded:

"While it may be true that the absence of a scaffold may bring one under the Structural Work Act, there are no cases which have broadened this Act to include the shoring up of an excavation. . . . I find no case that holds that a normal or ordinary sewer installation of the kind here, that requires shoring."

We believe that this conclusion is not properly addressed to the sufficiency of the complaint,[3] but rather to an evidentiary issue. It becomes a question of fact whether defendant should have caused the devices set forth in the act to be used to guard against the danger to which decedent was exposed while working in or about a structure.

The Structural Work Act does not define what shall constitute a safe "support," and the question of whether the absence of some type of lateral support

---

[3] The complaint here stated, among other allegations, that defendant failed to comply with the provisions of the Structural Work Act in that he willfully "failed to provide or erect safe, suitable, and proper stays, supports, shoring, or other mechanical contrivances in the subject trench."

296

made for an unsafe condition which was the proximate cause of the worker's injury is properly left for the determination of the court or jury. Walden v. Schillmoeller & Krofl Co., 111 Ill App2d 95, 100, 248 NE2d 547 (1969). See also Schultz v. Henry Ericsson Co., 264 Ill 156, 164, 106 NE2d 236 (1914).

We, therefore, reverse and remand for further proceedings in accordance with this opinion.

Reversed and remanded.

ABRAHAMSON and MORAN, JJ., concur.