RANDALL P. PRICE *et al.*, Plaintiffs-Appellees, v. VICTORY BAPTIST CHURCH OF SUNNYLAND, a/k/a Victory Baptist Church, a/k/a Victory Land Baptist Church, Defendant-Appellant.

Third District   No. 3—89—0439

Opinion filed November 30, 1990.

HEIPLE, P.J., dissenting.

Duncan B. Cooper III and Craig S. Young, both of Heyl, Royster, Voelker & Allen, of Peoria (Karen L. Kendall, of counsel), for appellant.

Stephen D. Gay, of Husch, Eppenberger, Donohue, Cornfeld & Jenkins, of Peoria, and Richard G. Hayes, of Pekin (Jeffrey A. Ryva, of counsel), for appellees.

JUSTICE SCOTT delivered the opinion of the court:
Defendant, Victory Baptist Church of Sunnyland, an Illinois religious corporation, appeals from a judgment entered upon a jury verdict awarding the plaintiffs, Randall P. and Julie C. Price, $287,500 in damages under the Structural Work Act (Act) (Ill. Rev. Stat. 1987, ch. 48, par. 60).

On December 6, 1985, defendant was engaged in the alteration of what had been a store building for use as its church. The plaintiff, a member of the congregation, had regularly assisted in the remodeling

project in a volunteer capacity and was working at the site. Pastor Buddy Glass, the head of the church and overseer of the remodeling, instructed the plaintiff to install a second speaker along the wall of the proposed church auditorium. The plaintiff positioned a ladder against a metal duct along the wall and climbed to the top. As the plaintiff stepped from the ladder to the duct, the ladder slid out from under him, and he fell approximately 12 feet to the concrete floor.

The ladder was the bottom half of an extension ladder which was being used independently because the top and bottom parts would not fit together. The ladder had been supplied by Robert Frye, Sr., an experienced construction worker, who was appointed supervisor of the remodeling project by Pastor Glass. Our assumption, based on the jury verdict, is that the ladder was unsafe, too short for the job. No contrary argument is made by the church on appeal.

Defendant makes four arguments: (1) that the plaintiff as an unpaid volunteer is not among the class of people that the Structural Work Act is designed to protect; (2) that the defendant did not have charge of the construction site for the purposes of the Act; (3) that the doctrine of assumption of risk can be an affirmative defense in a Structural Work Act case and should be applied here; and (4) that there was an insufficient basis for the jury to award $57,500 in medical damages. We address these arguments in the foregoing order and affirm.

Defendant would have this court focus on the purpose of the Structural Work Act as stated in a multitude of cases that do not involve unpaid volunteers rather than examine the relevant statutory language. To this end, it argues that plaintiff was not its employee, that he was not employed in a construction occupation, that enforcement of the verdict in the instant case will not promote the safety of construction workers and that the church does not profit from construction activities.

In *Meyer v. Caterpillar Tractor Co.* (1990), 135 Ill. 2d 1, 7-8, 552 N.E.2d 719, the Illinois Supreme Court reiterated the rule that the Act may be violated by a defective ladder and stated at the outset of its analysis that the purpose of the Act is "to provide protection to workers engaged in work activities of a particularly hazardous nature." This approach is relevant in the instant case. Although *Meyer* decided that the bundle of steel storage racks sitting on the ground which fell over was outside the scope of the statute, it did note that Harold Meyer had the benefit of the Workers' Compensation Act (Ill. Rev. Stat. 1987, ch. 48, par. 138.1 *et seq.*), a circumstance not present here. The presence or absence of workers' com-

pensation insurance coverage is not that significant in the instant case; this case turns on the terminology of the Act itself.

At the outset we note that Rule 341(e)(5) (107 Ill. 2d R. 341(e)(5)) requires an appellant, in any case involving the construction of a statute, to set out verbatim the pertinent parts of that statute under an appropriate heading such as "Statutes Involved." Defendant's brief omits this requirement. The applicable statutory language is as follows:

> "All *** ladders *** erected or constructed by any person *** for the use in the erection [or] alteration *** of any *** building *** or other structure, shall be erected and constructed, in a safe, suitable and proper manner and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed *or engaged* thereon ***." (Emphasis added.) Ill. Rev. Stat. 1987, ch. 48, par. 60.

█ Plaintiff, as a person "employed or engaged" on the project, is easily within the contemplation of the Act; there simply is no statutory requirement that such a person receive *monetary* compensation. Defendant's argument also neglects the special relationship members of a church have with one another and their pastor. The trial record indicates Pastor Glass made members feel guilty if they did not volunteer. The circumstance that plaintiff did not receive *monetary* compensation does not exclude him from the protection of the Act. *Long v. City of New Boston* (1981), 95 Ill. App. 3d 430, 420 N.E.2d 282, *aff'd in part, rev'd in part on other grounds* (1982), 91 Ill. 2d 456, 440 N.E.2d 625.

In *Warren v. Meeker* (1973), 55 Ill. 2d 108, 113, 302 N.E.2d 54, 57, the Illinois Supreme Court, in rejecting a contention that the Act was inapplicable to farmers or farm hands, said that "the plain language *** of the Act *** extends protection to 'any person' engaged on a ladder while repairing a structure."

Unpaid volunteers are not, on that basis alone, barred from recovery under the Act. (*Long v. City of New Boston* (1981), 95 Ill. App. 3d 430, 420 N.E.2d 282, *aff'd in part, rev'd in part on other grounds* (1982), 91 Ill. 2d 456, 440 N.E.2d 625.) In *Long*, the plaintiff, while performing a civic function as an unpaid volunteer, was assisting in erecting decorative Christmas lights when he fell from the ladder on which he was standing. Relying on *Warren v. Meeker* (1973), 55 Ill. 2d 108, 302 N.E.2d 54, this court held that any person engaged on a ladder was protected by the Act, including volunteers.

█ The second contention on appeal is that the defendant was

not in charge of the work being done for purposes of the Act. Although there is no rigid formula for deciding the "in charge" question, still it is useful to consider the factors outlined in *Zukauskas v. Bruning* (1989), 179 Ill. App. 3d 657, 662, 534 N.E.2d 680, 683. They are as follows:

Did the defendant * * *

(1) supervise and control work?

(2) retain the right to supervise and control?

(3) consistently participate in the work?

(4) supervise and coordinate subcontractors?

(5) take responsibility for safety at the site?

(6) have authority to change orders?

(7) have the right to stop work?

(8) own equipment at the site?

(9) have knowledge of construction customs and practices?

(10) have ability to assure worker safety or alleviate equipment deficiencies or improper work habits?

The corporate defendant, Victory Baptist Church of Sunnyland, exercised, or had the power to exercise, all or the more significant of the above-listed powers. During cross-examination, Robert Frye stated, "Pastor Glass was in charge of the job." Later, when asked if Glass was the one in charge, he answered affirmatively. From the beginning of the project, workers were instructed to bring any questions to Glass, Frye, or assistant pastor Howard Humphrey.

Glass drew the plans for the project and made the final decisions on how the new church would be set up. At a church meeting prior to beginning the project, Glass announced he had appointed Frye as the supervisor of the project because of his construction experience. Frye agreed to accept this responsibility. Frye did the layout for practically all of the construction of the walls and the baptistry, as well as cutting the boards that were used.

Glass had an office at the site and was present virtually all the time. Price testified that this was the common procedure during the project: They (she and Mr. Price) would go to the site, report to Glass' office, and he would assign them a task. Randy Price testified that on the day he was injured he went to Glass' office when he arrived at the site. Price asked Glass what he wanted him to do, and Glass told him to hang a speaker on a wall "directly opposite of the other speaker."

Glass knew a ladder would be needed to install the speaker and that plaintiff Price would have to "fish a wire" through the wall while Price was at the top of the ladder. Glass also knew, or should

have known, that only one ladder at the site was tall enough for the job, that plaintiff had no choice of which ladder to use. Plaintiff was forced to use the bottom half of an extension ladder that Robert Frye had supplied for the project. Because the ladder was broken, the top and bottom halves would not stay together. Plaintiff testified that he had informed Glass of this prior to the accident.

Defendant argues that it did not supply or maintain the ladder or control its use. This argument is not persuasive. The ladder was supplied by Robert Frye. As supervisor of the project, Frye was an agent of the defendant.

Furthermore, plaintiff had no choice in how to go about performing the task assigned to him by Pastor Glass. He had to use a ladder, and only one ladder was tall enough to do the job.

The issue of control of the ladder, at the time of injury, is not enough, by itself, to insulate or immunize a corporate defendant that had overall responsibility for the work being performed and who also specifically directed the plaintiff to do the task that resulted in his injury. *Larson v. Commonwealth Edison Co.* (1965), 33 Ill. 2d 316.

As stated in *Bisset v. Joseph A. Schudt & Associates* (1985), 133 Ill. App. 3d 356, 358, 478 N.E.2d 911, 913:

> "As long as there is some evidence connecting the person named, a jury question is presented. ***
>
> Therefore, unless the evidence, when viewed most favorably to the plaintiff, so overwhelmingly favors the defendant that no contrary verdict could stand, the verdict should be affirmed."

■ In the third alternative, defendant argues assumption of the risk as an affirmative defense. It points out that the plaintiff will- ingly accepted the risks associated with construction work; he positioned the ladder himself. However, the cause of action in this case is statutory, not common law, negligence. The supreme court has consistently held that comparative negligence or assumption of risk does not bar recovery in Structural Work Act cases. (*Simmons v. Union Electric Co.* (1984), 104 Ill. 2d 444, 459, 473 N.E.2d 946, 953; *Hollis v. R. Latoria Construction, Inc.* (1985), 108 Ill. 2d 401, 410, 485 N.E.2d 4, 8; *Prewein v. Caterpillar Tractor Co.* (1985), 108 Ill. 2d 141, 483 N.E.2d 224.) In *Simmons*, the court stated, "the sole inquiry under the Act is an assessment of the defendant's culpability and not the plaintiff's conduct." (*Simmons*, 104 Ill. 2d at 459, 473 N.E.2d at 953.) The court went on to point out that only by excluding consideration of the plaintiff's conduct would the Act be an effective remedy.

■ Defendant's final contention is that the jury had no basis on which to award $57,500 in medical damages or more precisely to award over $40,000 for future medical expenses.

Plaintiff had already undergone two knee operations and had shown little sign of improvement. Dr. Cahill, an orthopedic surgeon, testified more operations would probably be done in the future and that plaintiff's condition would deteriorate. The amount of future damages was nearly 2½ times the amount of medical expenses that had already accrued. Those past expenses ($16,865.68) were known to the jury. Assuming a normal life span, plaintiff has 40 plus years of expenses to anticipate. These expenses will range from operations to therapy to regular maintenance and replacement of knee braces; he may need crutches or a wheelchair to get around.

Defendant's argument is that the plaintiff's witness, Dr. Cahill, gave no specific estimate of the future costs of the plaintiff's medical care. Future medical expenses may be determined without a precise estimate in the circumstances that exist here. (*Levin v. Welsh Brothers Motor Service, Inc.* (1987), 164 Ill. App. 3d 640, 659, 518 N.E.2d 205, 218; *Long v. Friesland* (1988), 178 Ill. App. 3d 42, 58, 532 N.E.2d 914, 924; *Young v. Gateway Transportation Co.* (1975), 26 Ill. App. 3d 864, 871, 326 N.E.2d 222, 228.) We see no basis for the granting of a new trial on this issue.

The Structural Work Act applies to the plaintiff, and there is ample evidence to support the verdict of the jury. Assumption of risk is not a defense.

The judgment of the circuit court of Tazewell County is affirmed.

Affirmed.

BARRY, J., concurs.

PRESIDING JUSTICE HEIPLE, dissenting:

This appeal is taken by the defendant, the Victory Baptist Church of Sunnyland, Illinois, following a jury trial wherein the plaintiffs, Randall and Julie Price, were granted a $287,500 verdict on a Structural Work Act claim (hereinafter Act) (Ill. Rev. Stat. 1987, ch. 48, par. 60). Randall, a 27-year-old member of the church, was injured when he fell off a ladder while working in a voluntary capacity on church remodeling activities. While I agree with the majority that a ladder is included within the purview of the Act and that a volunteer might be covered under the Act if someone is directing his work, I find that no one was in charge of Randall's work. Ac-

cordingly, a Structural Work Act claim does not apply under the facts of this case and I dissent.

In the winter of 1985, Victory Baptist Church was converting an old grocery store into its church facilities. The remodeling work was done by church members on a volunteer basis with the exception of electrical work, which was contracted out. The plaintiff had regularly assisted in the remodeling project, and on December 6, 1985, the plaintiff went to the church in order to install speakers in the building. According to Pastor Buddy Glass, Randy volunteered for the project because he had experience in installing sound systems. Pastor Glass stated that he only told the plaintiff where to hang the speakers on the wall but that "I did not tell him *** how to go about doing it" because "I was leaving it up to him" since it "was his responsibility." With regard to safety precautions, Pastor Glass testified that "we just left it up to the discretion and to the responsibility of that worker to take all safety precautions" because it was volunteer work.

At the time of the accident, the plaintiff and his wife were working alone in the back section of the building. To install the speakers on the wall, the plaintiff was using the bottom part of an extension ladder independently because the top and bottom parts would not fit together. The ladder had been loaned by Robert Frye, a member of the church who had been appointed supervisor of the remodeling project by Pastor Glass. Mr. Frye was not at the site when the plaintiff was injured and had not been there for two or three weeks. In attempting to thread the speaker wire, the plaintiff climbed the ladder and tried to step across an air duct when the ladder slipped from beneath him. The plaintiff fell approximately 12 feet to the concrete floor and injured his left leg.

The Structural Work Act imposes a duty of care on an "owner, contractor, sub-contractor, foreman or other person having charge of the *** construction *** of any building *** within the provisions of this act." (Ill. Rev. Stat. 1987, ch. 48, par. 69.) While the determination of whether a defendant had charge of the work has generally been held to be for the trier of fact, this issue may be determined as a matter of law where the evidence presented is insufficient to create a factual question. (*Norton v. Wilbur Waggoner Equipment Rental & Excavating Co.* (1979), 76 Ill. 2d 481.) The majority, citing to *Zukauskas v. Bruning* (1989), 179 Ill. App. 3d 657, delineated the following factors to be considered in deciding the "in charge" question:

"Did the defendant ***

(1) supervise and control work?

(2) retain the right to supervise and control?

(3) consistently participate in the work?

(4) supervise and coordinate subcontractors?

(5) take responsibility for safety at the site?

(6) have authority to change orders?

(7) have the right to stop work?

(8) own equipment at the site?

(9) have knowledge of construction customs and practices?

(10) have ability to assure worker safety or alleviate equipment deficiencies or improper work habits?" (205 Ill. App. 3d at 608.)

The majority finds that based on these factors, there was sufficient evidence to conclude that Victory Baptist Church was "in charge" of the work when Randall was injured. I disagree.

Pastor Glass testified that no one was directing Randall's installation of the speakers and that it was Randall's responsibility to determine how the job was to be completed. When the plaintiff was injured, no other person was supervising this work. Additionally, the ladder the plaintiff fell from was not owned by the church. Moreover, the renovating work was being done by volunteers who were responsible for taking their own work and safety precautions. Based on these facts, it is clear that the church was not "in charge" of the work within the meaning of the Structural Work Act. Rather, by analogy, the facts of this case compare with a homeowner who merely schedules the work to be done and purchases the supplies, but does not exercise control over those who perform the work. In such situations, the homeowner is not a party "in charge" and the Structural Work Act does not apply. (*Angus v. Doss* (1987), 157 Ill. App. 3d 300.) Similar reasoning should be applied to the facts of the case at bar.

Therefore, I dissent.