CLAUDIE D. BURGESS, Plaintiff-Appellant, v. MARK POCRNICH, Defendant-Appellee.

Fifth District    No. 5—95—0947

Opinion filed November 21, 1996.

WELCH, J., dissenting.

Michael J. Meyer, of Effingham, for appellant.

Brien J. O'Brien, of Ryan, Bennett & Radloff, of Mattoon, for appellee.

JUSTICE CHAPMAN delivered the opinion of the court:

On October 24, 1992, Mark Pocrnich, defendant, asked Claudie Burgess, plaintiff, to assist him in trimming a tree on defendant's property because the tree's branches were in close proximity to the utility line connected to defendant's house. Plaintiff agreed. While using defendant's ladder to do the trimming, plaintiff fell to the ground and was injured. Plaintiff filed an action for personal injury under the provisions of the Structural Work Act (740 ILCS 150/1 *et seq.* (West 1994) (repealed by Pub. Act 89—2, § 5, eff. February 14, 1995)). The court granted defendant's motion under section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1994)).

This appeal addresses three issues: (1) whether a volunteer is a person protected by the Structural Work Act; (2) whether a utility line servicing a residence is part of a "house" or "other structure" within the purview of the Structural Work Act; and (3) whether the trimming of trees to prevent damage to a utility line is a covered activity within the meaning of the Structural Work Act. We reverse and remand.

■ Before addressing the substantive issues presented, we note that the court granted defendant's motion to dismiss pursuant to section 2—615 of the Code of Civil Procedure. A motion to dismiss under section 2—615 attacks only the legal sufficiency of the complaint. *Barber-Colman Co. v. A&K Midwest Insulation Co.*, 236 Ill. App. 3d 1065, 1068, 603 N.E.2d 1215, 1218 (1992). A court reviewing an order granting a section 2—615 motion takes all well-pleaded facts as true. *Roehrborn v. Lambert*, 277 Ill. App. 3d 181, 183, 660 N.E.2d 180, 182 (1995). In reviewing orders on section 2—615 motions to dismiss, appellate courts apply a *de novo* standard of review. *Roehrborn*, 277 Ill. App. 3d at 183, 660 N.E.2d at 182.

■ The first issue to be discussed is whether a volunteer is within the class of people covered by the Structural Work Act (Act). Plaintiff argues that our decision in *O'Brien v. Rogers*, 198 Ill. App. 3d 341, 555 N.E.2d 1005 (1990), governs this case and that, under *O'Brien*, a volunteer is a protected person under the Act. Defendant agrees that *O'Brien* governs this issue, but he urges this court to reconsider its ruling in *O'Brien*.

The plaintiff in *O'Brien* was seriously injured while assisting the defendant in putting a new roof on defendant's house. *O'Brien*, 198 Ill. App. 3d at 346, 555 N.E.2d at 1007. Although the plaintiff was not paid for his assistance, there was some dispute as to whether the plaintiff was helping the defendant in order to repay the defendant,

who had earlier helped the plaintiff rebuild the roof of his own house. *O'Brien*, 198 Ill. App. 3d at 345-46, 555 N.E.2d at 1007-08. *O'Brien* stated:

> "Even if we were to assume for the sake of argument that plaintiff was working for free, defendant's argument would still fail. Nothing in the language of the Structural Work Act limits the statute's coverage to individuals who are being paid for their labor. The Act requires that scaffolding and other support devices must be so erected and constructed, placed and operated so as to give proper and adequate protection not only to persons 'employed' thereon, but also to persons 'engaged' thereon. [Citation.] The word 'engaged' has been defined as meaning 'to be busied,' 'to carry on,' 'to devote attention and effort,' 'to embark on,' or 'to take part in.' [Citation.] None of these definitions implies payment for services.
>
> *** To hold otherwise would render the term 'engaged' completely superfluous. This would violate one of the basic rules of statutory construction, namely, that statutes should, if possible, be construed so that no term is rendered meaningless or superfluous." *O'Brien*, 198 Ill. App. 3d at 347-48, 555 N.E.2d at 1009.

The first district relied upon *O'Brien*'s reasoning for its decision in *Coates v. W.W. Babcock Co.*, 203 Ill. App. 3d 165, 560 N.E.2d 1099 (1990). The third district, in *Price v. Victory Baptist Church*, 205 Ill. App. 3d 604, 607, 563 N.E.2d 1244, 1247 (1990), also concluded that volunteers are not barred from the Structural Work Act's protection simply because they are volunteers. In *Warren v. Meeker*, 55 Ill. 2d 108, 113, 302 N.E.2d 54, 57 (1973), the supreme court held that the Structural Work Act applied to a farmhand who was injured by falling from a ladder while repairing a structure. *Warren* relied upon the Act's plain language, "which extends protection to '*any person*' engaged on a ladder while repairing a structure." (Emphasis added.) *Warren*, 55 Ill. 2d at 112-13, 302 N.E.2d at 57. We decline to overrule *O'Brien*, and we stand firmly behind *O'Brien*'s holding that the Structural Work Act applies to volunteers.

■ The second issue to be addressed is whether the poles and lines of a utility that services a residence are part of a "house" or "other structure" within the meaning of the Structural Work Act. The Structural Work Act states in pertinent part:

> "All scaffolds, hoists, cranes, stays, ladders, supports, or other mechanical contrivances *** for the use in the erection, repairing, alteration, removal or painting of any *house*, building, bridge, viaduct, or *other structure*, shall be erected and constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate

protection to the life and limb of any person or persons employed or engaged thereon, or passing under or by the same, and in such manner as to prevent the falling of any material that may be used or deposited thereon." (Emphasis added.) 750 ILCS 150/1 (West 1994).

Plaintiff argues that the utility line that serviced defendant's house was an integral part of the house. Plaintiff further argues that the utility line, either by itself or in conjunction with defendant's house, was a structure within the meaning of the Structural Work Act. Our conclusion is based on the second contention.

The Illinois Supreme Court has never specifically addressed whether a utility line is a structure within the meaning of the Structural Work Act. In *Long v. City of New Boston*, 91 Ill. 2d 456, 459, 440 N.E.2d 625, 626 (1982), the plaintiff was injured while standing on a ladder that was leaning against a utility pole. The plaintiff was stringing Christmas lights along the main street of the city. The court assumed, for the sake of argument, that the utility pole was a structure but concluded that, under the facts of the case, the plaintiff had no cause of action under the Structural Work Act. *Long*, 91 Ill. 2d at 467, 440 N.E.2d at 630. The court did not base its holding on the fact that the utility pole was not a structure but, instead, based its holding on the fact that the plaintiff was not engaged in an alteration of the structure. *Long*, 91 Ill. 2d at 467, 440 N.E.2d at 630.

In *Wood v. Commonwealth Edison Co.*, 343 F. Supp. 1270, 1271 (N.D. Ill. 1972), the court held that a utility pole, together with its crossbeams and any wires strung from it, was a structure under the Illinois Structural Work Act. *Gill v. Parcable, Inc.*, 138 Ill. App. 3d 409, 412, 485 N.E.2d 1215, 1216 (1985), rejected what it termed *Wood*'s "broad statutory construction" and distinguished it on its facts. Specifically, *Gill* concluded that the plaintiff in *Wood* was involved in an alteration of the utility pole itself, while the plaintiff in *Gill*, who attached fasteners to utility poles which were designed to hold a cable television line, performed a task that was unrelated to the utility pole as part of a structural system of electricity. *Gill*, 138 Ill. App. 3d at 412, 485 N.E.2d at 1216-17.

■ We hold that *Gill*'s analysis of whether a plaintiff has a cause of action under the Structural Work Act is incorrect. The first issue to be decided is whether the entity the plaintiff was working on is a "structure" within the meaning of the Act. The second, and distinctly different, issue to address is whether the plaintiff's activity is a covered activity under the Structural Work Act.

■ To assist in answering the first question, whether plaintiff was working on a structure, we look at the Structural Work Act itself.

The Act does not specifically define "structure," and we are left with case law descriptions as to what constitutes a structure. *Navlyt v. Kalinich*, 125 Ill. App. 2d 290, 260 N.E.2d 855 (1970), *aff'd*, 53 Ill. 2d 137, 290 N.E.2d 219 (1972), involved a worker killed during the construction of a sewer system when a ditch collapsed on him. The appellate court decision in *Navlyt* provides insight on the meaning of the word "structure" in the Structural Work Act:

> "We recognize limitations in importing definitions from other statutes, since the context in which a term is used obviously bears on its intended meaning. However, in the context of a liberal construction universally given to the Structural Work Act, we do not conceive that the word 'structure' was intended to have less than its commonly accepted broad meaning." *Navlyt*, 125 Ill. App. 2d at 295, 260 N.E.2d at 857.

The appellate court went on to rely upon *Brown v. City of Decatur*, 188 Ill. App. 147 (1914), which defined a structure as "anything that is built or constructed." *Navlyt*, 125 Ill. App. 2d at 295, 260 N.E.2d at 857.

The supreme court affirmed the appellate court's decision and pointed out that whether the ditch was itself a structure was unimportant because:

> "The plaintiffs' decedent was working upon a sewer system which we clearly conceive to be a 'structure' under the Structural Work Act either considered by itself or as an integral part of the buildings being erected on a construction site." *Navlyt*, 53 Ill. 2d at 138-39, 290 N.E.2d at 220.

Turning from definitions found in cases to those found in dictionaries, Black's Law Dictionary defines "structure" as:

> "*Any construction*, or any production or piece of work artificially built up or composed *of parts joined together in some definite manner*. That which is built or constructed; an edifice or building of any kind." (Emphasis added.) Black's Law Dictionary 1424 (6th ed. 1990).

Webster's Dictionary defines "structure" as:

> "1: the action of building: CONSTRUCTION 2 a: *something* (as a building) *that is constructed* \*\*\*." (Emphasis added.) Webster's Ninth New Collegiate Dictionary 1169 (1988).

In this case, the utility line was constructed above defendant's parcel of land to provide his house with electricity. Relying on the common usage of the word "structure," we hold that utility poles and lines are structures under the Structural Work Act. To the extent that *Gill v. Parcable, Inc.*, 138 Ill. App. 3d 409, 485 N.E.2d 1215, holds to the contrary, we overrule it.

■ We now turn to the third issue: whether the trimming of trees

to prevent damage to a utility line is a covered activity within the meaning of the Structural Work Act. Plaintiff argues that the complaint contains sufficient allegations to establish that he was engaged in maintenance, or repair, of the utility line at the time of his injury. Defendant argues that even if the utility line is a "structure" within the meaning of the Act, plaintiff's trimming of a tree near the utility lines, rather than working on the poles and lines themselves, is not an activity covered by the Act.

The title of the Structural Work Act suggests that the Act is not limited to work performed directly on a structure:

> "An Act providing for the protection and safety of persons *in and about* the construction, repairing, alteration, or removal of buildings, bridges, viaducts, and other structures, and to provide for the enforcement thereof." (Emphasis added.) 1907 Ill. Laws 312 (eff. July 1, 1907) (740 ILCS 150/1 *et seq.* (West 1994)).

In this case, the plaintiff was trimming a tree that defendant feared would soon interfere with his house's utility lines. Plaintiff was not repairing the utility line itself, but he was assisting defendant in preventative maintenance on them. According to the facts alleged in the complaint, the tree plaintiff was trimming was close enough to the utility line to satisfy the "in and about" language of the Structural Work Act. See *McNellis v. Combustion Engineering, Inc.*, 58 Ill. 2d 146, 317 N.E.2d 573 (1974).

The next logical step is to consider whether "repairing" a structure under the Act also includes maintenance of the structure. The supreme court brought maintenance within the provision of the term "repairs" in *Halberstadt v. Harris Trust & Savings Bank*, 55 Ill. 2d 121, 302 N.E.2d 64 (1973). *Halberstadt* held that the Structural Work Act applied to a window washer who was killed when he fell from a commercial office building while washing windows. Washing windows is quite clearly an act of maintenance rather than one of repair. The supreme court referred to the appellate court's example of a window cleaner and window painter working on the same scaffold and its conclusion that it would be absurd to afford the protection of the Structural Work Act to one worker and not to the other. The supreme court agreed with the appellate court's analysis and concluded that "the function of washing windows is qualitatively comparable to that of repairing or painting a structure." *Halberstadt*, 55 Ill. 2d at 128, 302 N.E.2d at 68.

In *Simmons v. Union Electric Co.*, 104 Ill. 2d 444, 473 N.E.2d 946 (1984), the plaintiff was an employee of Sachs Electric Company, which had a contract with Union Electric to install and maintain electrical power to Union Electric's Cahokia plant. The plaintiff was

injured while descending into an ash pit to repair or do maintenance work on a sump pump. The supreme court held that the plaintiff's activity was covered by the Structural Work Act. Finally, in *Warren v. Meeker*, 55 Ill. 2d 108, 302 N.E.2d 54 (1973), the supreme court held that a complaint stated a cause of action under the Structural Work Act when it charged that the plaintiff was injured while repairing a "sweeping auger" in a silo.

The appellate court has also recognized the Structural Work Act's coverage for what might be more strictly termed maintenance activities, as opposed to repair activities. For example, *Duffin v. Seibring*, 154 Ill. App. 3d 821, 828, 507 N.E.2d 930, 934 (1987), held that the plaintiff's spraying of insecticide into the defendant's grain bin was an activity within the scope of the Structural Work Act. *Duffin* reasoned that although spraying insecticide into a grain bin did not affect the structural integrity of the bin, it did maintain the bin's usefulness for its intended purpose. *Duffin*, 154 Ill. App. 3d at 828, 507 N.E.2d at 934. The court reasoned that unless insecticide was sprayed to control corn weevils, a grain bin would be utterly useless for the purpose of storing grain. *Duffin*, 154 Ill. App. 3d at 828, 507 N.E.2d at 934.

Similarly, plaintiff's act of trimming the tree did not affect the structural integrity of the utility line. Plaintiff's act did, however, maintain the utility line's usefulness for its intended purpose of providing electricity to defendant's house. Following the language of the Structural Work Act to its logical extension, we hold that maintenance of a structure is equivalent to "repairing" a structure under the Act.

Clearly, if a tree branch had fallen against a utility line, or a tree had been uprooted and was pushing against a pole, the tree trimming would be necessary to maintain the regular use of the line. Therefore, as in *Simmons*, 104 Ill. 2d 444, 473 N.E.2d 946, the trimming would be a necessary repair under the Structural Work Act.

In the words of the *Duffin* court:

> "Like the washing of windows or the repair of a sump pump in order to remove water from a power plant ash pit, the spraying of insecticide into a grain bin does not affect the structural integrity of the bin. It does, however, maintain the bin's usefulness for its intended purpose, for absent the spraying of insecticide to control corn weevils, a grain bin would be utterly useless for the purpose of storing grain." *Duffin*, 154 Ill. App. 3d at 828, 507 N.E.2d at 934.
>
> "[The plaintiff] suggests it would be absurd to hold that he could recover under the Act for damages sustained in a fall while paint-

ing a grain bin, but that he could not recover under the Act for injuries sustained in a fall from the same position while spraying the bin." *Duffin*, 154 Ill. App. 3d at 827, 507 N.E.2d at 933. We note again that the supreme court approved a similar analogy in *Halberstadt v. Harris Trust & Savings Bank*, 55 Ill. 2d 121, 302 N.E.2d 64 (1973).

Defendant argues that this case is very similar to the fourth district case *Burkhart v. Illinois Power Co.*, 9 Ill. App. 3d 139, 291 N.E.2d 673 (1973). *Burkhart* affirmed the trial court's dismissal of the portion of the complaint which charged the defendant with violating the Structural Work Act, when the decedent was killed trimming trees along the defendant's power lines. *Burkhart*, 9 Ill. App. 3d at 140-41, 291 N.E.2d at 674. The court does not specifically address whether a power line is a structure under the Act. *Burkhart*, 9 Ill. App. 3d at 141, 291 N.E.2d at 674. Instead, the court based its ruling on the fact that the decedent was not working on the transmission line itself, and therefore, according to the court, he was not engaged in the repairing of a structure. *Burkhart*, 9 Ill. App. 3d at 141, 291 N.E.2d at 674. In addition, *Burkhart* specifically rejected the plaintiff's argument that the language of the title of the Act means that the Act is not intended to be limited to work done directly on, or in, a structure. *Burkhart*, 9 Ill. App. 3d at 141, 291 N.E.2d at 674.

We acknowledge *Burkhart*'s holding and the apparent factual similarities to the present case. However, we decline to follow it.

For the following reasons, we reverse the court's dismissal of plaintiff's complaint and remand to the circuit court for proceedings consistent with this opinion.

Reversed and remanded.

GOLDENHERSH, J., concurs.

JUSTICE WELCH, dissenting:
I dissent. See *Burkhart v. Illinois Power Co.*, 9 Ill. App. 3d 139 (1973).