JOHN C. SNEED, Independent Adm'r of the Estate of Sandra Marie Sneed, Deceased, Plaintiff-Appellant, v. BILLIE E. HOWELL *et al.*, Defendants-Appellees.

Fifth District No. 5—97—1066

Opinion filed August 26, 1999.

Sharron M. Gholson, of McLeansboro, and Michael D. McHaney, of Mt. Vernon, for appellant.

Bruce L. Carmen and Charles A. Pierce, both of Hinshaw & Culbertson, of Chicago, for appellee City of Mt. Vernon.

Elizabeth A. Knight and Paul Regelbrugge, both of Knight, Hoppe, Fanning & Knight, Ltd., of Des Plaines, for appellee Gary Duncan.

JUSTICE GOLDENHERSH delivered the opinion of the court:

On June 6, 1997, plaintiff John C. Sneed, independent administrator of the estate of Sandra Marie Sneed, deceased (hereinafter decedent), filed an 11-count complaint against defendants Billie E. Howell, the City of Mt. Vernon (hereinafter the City), and Jefferson County State's Attorney Gary Duncan (hereinafter the State's Attorney). The complaint alleged that Howell killed decedent between 11:20 p.m. on July 4, 1996, and 1:30 a.m. on July 5, 1996. Two counts of the complaint charged Howell under the Wrongful Death Act (740 ILCS 180/0.01 et seq. (West 1994)) and the Survival Act (755 ILCS 5/27—6 (West 1994)). Four counts were filed against the City: (1) negligence pursuant to the Wrongful Death Act, (2) negligence under the Survival Act, (3) willful and wanton negligence under the Wrongful Death Act, and (4) willful and wanton negligence pursuant to the Survival Act. Four counts were filed against the State's Attorney, based on the same principles as the four against the City. The final count was to compel Jefferson County Sheriff Roy D. Bradford to respond to discovery requests. On November 19, 1997, the court dismissed all counts with prejudice, except the two against Howell and the two willful and wanton counts against the City. On December 10,

1997, the court amended its order, finding no just reason for delaying appeal pursuant to Supreme Court Rule 304 (155 Ill. 2d R. 304(a)). Plaintiff filed a notice of appeal on December 15, 1997.

## I. FACTS

On December 8, 1997, plaintiff filed a four-count amended complaint, two against Howell and two against the City for willful and wanton negligence. On March 16, 1998, the court dismissed with prejudice the two counts against the City. On March 20, 1998, the court filed an amended order citing Supreme Court Rule 304. On March 23, 1998, plaintiff filed a notice of appeal. At that time the two appeals were consolidated.

On December 27, 1991, decedent and Howell married. After a tumultuous marriage, the parties divorced on August 29, 1994. On June 4, 1996, spurred by continued threats from Howell, decedent petitioned the Jefferson County circuit court for an order of protection. The court entered a plenary order of protection on June 18, 1996, effective until January 1, 1997. Steve Chiapelli, Jefferson County investigator and crime-witness advocate, hand-delivered to Howell at the Jefferson County courthouse a copy of the order of protection. The order prohibited Howell from (a) harassing, physically abusing, or interfering with the personal liberty of decedent, her minor son Joseph N. Sneed, and her mother Jessie M. South, (b) entering or remaining at decedent's home, place of employment at Best Inns, Mt. Vernon, or Rend Lake College, where decedent was a part-time student, and (c) stalking decedent.

On June 23, 1996, decedent reported to the City's police department that Howell slashed her back passenger-side tire. In a police photo lineup an eyewitness identified Howell as the person who slashed decedent's tire. The next day, decedent reported to the City's police department that Howell was watching her at the Best Inns, her place of work, from a Hardee's restaurant across the street at approximately 11:15 p.m. On July 1, 1996, decedent notified the City's police department that Howell was again watching her at work from the Hardee's restaurant across the street at approximately 11 p.m.. On July 4, 1996, at 11:20 p.m., as decedent left the Someplace Else Tavern in Mt. Vernon, Howell accosted her. He brandished a Jennings model semiautomatic J-22 pistol and forced her into his car. Howell shot decedent in the chest and continued to drive until 1:30 a.m. on July 5, 1996. Decedent bled to death during the drive.

The original complaint contained four counts against the Jefferson County State's Attorney for the failure to take action to protect decedent. The complaint charges that the State's Attorney had full

knowledge of Howell's actions and that because of the State's Attorney's friendship with Howell he willfully and wantonly violated his duties under the Illinois Domestic Violence Act of 1986 (Domestic Violence Act) (750 ILCS 60/101 *et seq.* (West 1994)). The November 19, 1997, order dismissed all four counts with prejudice based upon the circuit court's lack of subject matter jurisdiction.

Plaintiff's original complaint alleges that the City's police department negligently violated the Domestic Violence Act by willfully and wantonly taking no action to inhibit Howell's repeated violations of the June 18, 1996, protection order. The November 19, 1997, court order dismissed the two negligence claims with prejudice and the willful and wanton counts with leave to amend. The amended complaint alleges two counts of willful and wanton conduct. The trial court dismissed the two counts for the failure to state a cause of action.

Plaintiff appeals both the November 19, 1997, and March 16, 1998, court orders dismissing all counts against the City and the State's Attorney. For the reasons that will follow, we affirm the trial court's ruling as to the Jefferson County State's Attorney, and we reverse and remand to the trial court on the willful and wanton counts against the City.

## II. ANALYSIS

■ The trial court dismissed plaintiff's amended complaint pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1994)). A motion to dismiss under section 2—615 attacks the legal sufficiency of the complaint. See *Urbaitis v. Commonwealth Edison*, 143 Ill. 2d 458, 475, 575 N.E.2d 548, 555 (1991); *Burgess v. Pocrnich*, 284 Ill. App. 3d 757, 758, 672 N.E.2d 1334, 1336 (1996). In reviewing a section 2—615 motion to dismiss, the appellate court will conduct a *de novo* review. See *Urbaitis*, 143 Ill. 2d at 475, 575 N.E.2d at 555; *Burgess*, 284 Ill. App. 3d at 758, 672 N.E.2d at 1336. The reviewing court shall consider only the allegations contained in the pleadings. See *Urbaitis*, 143 Ill. 2d at 475, 575 N.E.2d at 556. A court reviewing an order granting a section 2—615 motion takes all well-pleaded facts as true. See *Burgess*, 284 Ill. App. 3d at 758, 672 N.E.2d at 1336; *Roehrborn v. Lambert*, 277 Ill. App. 3d 181, 183, 660 N.E.2d 180, 182 (1995). The question presented is whether the pleadings contain sufficient facts that, if proved, would entitle plaintiff to relief. See *Urbaitis*, 143 Ill. 2d at 475, 575 N.E.2d at 555.

## A

The first issue raised on appeal derives from the November 19, 1997, order dismissing plaintiff's four charges against the State's Attorney. Plaintiff's original complaint alleges two negligence counts and two willful and wanton counts against the State's Attorney. The trial

court dismissed the complaint in the circuit court for lack of subject matter jurisdiction.

■ In 1970 Illinois enacted a new constitution that abolished sovereign immunity for the State of Illinois, except as the General Assembly may provide by law. Ill. Const. 1970, art. XIII, § 4; see *Currie v. Lao*, 148 Ill. 2d 151, 157-58, 592 N.E.2d 977, 979 (1992); *Healy v. Vaupel*, 133 Ill. 2d 295, 307, 549 N.E.2d 1240, 1246 (1990); *Sass v. Kramer*, 72 Ill. 2d 485, 489-90, 381 N.E.2d 975, 976 (1978). At the same time the 1970 Illinois Constitution was ratified, the General Assembly enacted the Court of Claims Act (705 ILCS 505/1 *et seq.* (West 1994)). The Court of Claims Act states:

> "The court [of claims] shall have exclusive jurisdiction to hear and determine the following matters:
>
> * * *
>
> (d) All claims against the State for damages in cases sounding in tort, if a like cause of action would lie against a private person or corporation in a civil suit ***." 705 ILCS 505/8(d) (West 1994).

Enacting the Court of Claims Act concurrently with the ratification of the 1970 Illinois Constitution indicates a legislative intent to codify common law public official immunity. See *Currie*, 148 Ill. 2d at 158, 592 N.E.2d at 979-80; *Healy*, 133 Ill. 2d at 307, 549 N.E.2d at 1246; *Sass*, 72 Ill. 2d at 490, 381 N.E.2d at 976.

■ Public official immunity serves to prevent state officials from being inhibited from acting in the public's best interest because of fears of personal liability. See *Currie*, 148 Ill. 2d at 166, 592 N.E.2d at 984; *Janes v. Albergo*, 254 Ill. App. 3d 951, 957, 626 N.E.2d 1127, 1131 (1993). Sovereign immunity allows the state to protect itself from being sued except under terms established by itself. See *Healy*, 133 Ill. 2d at 308, 549 N.E.2d at 1247; *Janes*, 254 Ill. App. 3d at 956, 626 N.E.2d at 1130-31. These two principles serve to protect discretionary functions of state employees. See *Currie*, 148 Ill. 2d at 166, 592 N.E.2d at 984; *Janes*, 254 Ill. App. 3d at 957, 626 N.E.2d at 1131. The key issue to the assertion of sovereign immunity is whether or not the state has an interest in the lawsuit.

■ Regardless of the formal identification of the parties, the determinant lies in the issues raised or the relief sought. See *Healy*, 133 Ill. 2d at 308, 549 N.E.2d at 1247. If the issues have an effect on state policy or policy implementation or if the relief sought could adversely affect the state or necessitate an alteration of state policy, the Court of Claims has exclusive jurisdiction. See *Janes*, 254 Ill. App. 3d at 958, 626 N.E.2d at 1132.

■ In *Healy*, the supreme court recognized a three-part test to determine if the state is a party to the suit. "[W]hen 'there are (1) no allegations that an agent or employee of the State acted beyond the

scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment; and (3) where the complained-of actions involve matters ordinarily within that employee's normal and official functions of the State, then the cause of action is only nominally against the employee.' " *Healy*, 133 Ill. 2d at 309, 549 N.E.2d at 1247, quoting *Robb v. Sutton*, 147 Ill. App. 3d 710, 716, 498 N.E.2d 267, 272 (1986); see *Janes*, 254 Ill. App. 3d at 958, 626 N.E.2d at 1132.

According to the test outlined in *Healy*, the court must first determine if a State's Attorney is a state employee. Section 19 of article VI, the judicial article, of the 1970 Illinois Constitution established the State's Attorney's office. Ill. Const. 1970, art. VI, § 19; see *Ingemunson v. Hedges*, 133 Ill. 2d 364, 367, 549 N.E.2d 1269, 1270 (1990). Even though the law creating the office is contained in the judicial article, there is still a question of whether the State's Attorney is in reality a county official. For instance, State's Attorneys are elected by the voters of each county. If State's Attorneys are county employees, then their acts would be governed by the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/1—101 (West 1994)), not the Court of Claims Act. To clarify this classification, we look at the debates of the Sixth Illinois Constitutional Convention of 1969-70.

The drafters adopted the supreme court decision in *Hoyne v. Danisch*, 264 Ill. 467, 106 N.E. 341 (1914). See *Ingemunson*, 133 Ill. 2d at 369-70, 549 N.E.2d at 1271-72. In *Hoyne* the supreme court dealt with the issue of whether a State's Attorney is a state employee or a county employee. *Hoyne*, 264 Ill. at 470-71. The supreme court held that the language of the 1870 Illinois Constitution established State's Attorneys as state employees.

■ In *Ingemunson*, the supreme court revisited the issue of the classification of State's Attorneys. In that case, the supreme court had to determine whether State's Attorneys were in the judicial branch or the executive branch of government. In determining that the 1970 Illinois Constitution specifically put State's Attorneys in the judicial article, the supreme court acknowledged that the drafters of the 1970 Constitution embraced the principles in *Hoyne*. *Ingemunson*, 133 Ill. 2d at 369-70, 549 N.E.2d at 1271-72. "The debates of the Sixth Illinois Constitutional Convention of 1969-70 indicate that the drafters of our present constitution agreed with the decision in *Hoyne* that State's Attorneys should be classified as State, rather than county, officials." *Ingemunson*, 133 Ill. 2d at 369, 549 N.E.2d at 1271-72; see 2 Record of Proceedings, Sixth Illinois Constitutional Convention 730-31, 741-42. The 1970 Illinois Constitution classified State's Attorneys as employees of the State of Illinois.

The next question is whether a state employee is acting within the scope of employment. The Court of Claims Act grants exclusive jurisdiction to the Court of Claims, unless the state employee exceeds the scope of employment by violating laws or regulations of government agencies. *Currie*, 148 Ill. 2d at 158-59, 592 N.E.2d at 980; *Sass*, 72 Ill. 2d at 492, 381 N.E.2d at 977. Plaintiff alleges that the State's Attorney's failure to act on Howell's stalking violated the Jefferson County domestic violence policy and as such constitutes the willful and wanton negligent performance of his duties. Plaintiff argues that the State's Attorney could then be sued in the circuit court under the principle that where an employee is charged with breaching his duties, the Court of Claims Act would not be applicable. See *Currie*, 148 Ill. 2d at 159, 592 N.E.2d at 980.

■ The weakness in plaintiff's argument is that the responsibilities of a State's Attorney arise because of his employment by the state. See *Ingemunson*, 133 Ill. 2d at 370, 549 N.E.2d at 1272. We also cannot agree that the State's Attorney abused his discretion. His office obtained an order of protection. He was aware of Howell's violation of said order. Plaintiff alleges that the State's Attorney's friendship with Howell led to his negligent performance of his duties by taking no action with his office and by removing the case to the Marion County State's Attorney. However, removing a case to a neighboring county because of a personal connection, to ensure a proper investigation and possible prosecution, is a prudent course of action. The State's Attorney, as a state employee, acted well within the reasonable boundaries of his discretionary powers. The circuit court lacks subject matter jurisdiction.

B

■ The second issue is whether the City is immune from tort liability. As noted above, the 1970 Illinois Constitution abolished the sovereign immunity doctrine in the State of Illinois. Ill. Const. 1970, art. XIII, § 4. The 1970 Constitution vested exclusive authority in the State General Assembly to grant immunity to government entities. See *Currie*, 148 Ill. 2d at 157-58, 592 N.E.2d at 979; *Healy*, 133 Ill. 2d at 307, 549 N.E.2d at 1246; *Sass*, 72 Ill. 2d at 489-90, 381 N.E.2d at 976. While the Court of Claims Act gave immunity to state employees acting within the scope of their employment, the Tort Immunity Act gives municipalities, and their employees, immunity from the negligent performance of their duties. 745 ILCS 10/1—101.1 (West 1994). The General Assembly's intent is based upon a common law principle, the public-duty doctrine.

■ The Tort Immunity Act and the common law public-duty doctrine are based on a public policy decision to insulate law enforcement officers from liability resulting from the negligent performance of

their duties. See *Calloway v. Kinkelaar*, 168 Ill. 2d 312, 326, 659 N.E.2d 1322, 1329 (1995); *Leone v. City of Chicago*, 156 Ill. 2d 33, 619 N.E.2d 119, (1993); *Burdinie v. Village of Glendale Heights*, 139 Ill. 2d 501, 565 N.E.2d 654 (1990). The special-duty doctrine functions as an exception to the public-duty doctrine and the Tort Immunity Act. See *Calloway*, 168 Ill. 2d at 328, 659 N.E.2d at 1330; *Leone*, 156 Ill. 2d 33, 619 N.E.2d 119; *Moran v. City of Chicago*, 286 Ill. App. 3d 746, 751, 676 N.E.2d 1316, 1320 (1997). If a party establishes herself as a person with special needs, and the law enforcement community negligently performs the duty owed to said person, then the law enforcement community enjoys no immunity. See *Calloway*, 168 Ill. 2d at 327, 659 N.E.2d at 1329; *Huey v. Town of Cicero*, 41 Ill. 2d 361, 243 N.E.2d 214 (1968). Plaintiff claims that the order of protection established decedent as a person in need of a special duty from the police. However, the Tort Immunity Act and the common law public-duty doctrine are not applicable in this case because the General Assembly enacted the Illinois Domestic Violence Act of 1986 (Domestic Violence Act) to deal with these issues. 750 ILCS 60/102 (West 1994); see *Calloway*, 168 Ill. 2d at 327, 659 N.E.2d at 1329.

In 1986, the General Assembly enacted the Domestic Violence Act. Pub. Act 84—1305, eff. August 21, 1986 (adding Ill. Rev. Stat., 1986 Supp., ch. 40, par. 2311—1 *et seq.*). The supreme court has considered how to apply the Domestic Violence Act in cases of the failure to protect victims of domestic abuse, in *Calloway v. Kinkelaar*, 168 Ill. 2d 312, 659 N.E.2d 1322 (1995).

In *Calloway*, the plaintiff alleged that the Effingham County sheriff and Effingham County failed to protect her under the Domestic Violence Act. The plaintiff filed a four-count complaint for infliction of emotional distress. Two counts were based on negligence, and two on willful and wanton conduct. The trial court dismissed all four counts for the failure to state a claim. This court affirmed the dismissal of the negligence counts, reversed the dismissal of the willful and wanton counts, and remanded. *Calloway v. Kinkelaar*, 261 Ill. App. 3d 63, 633 N.E.2d 1380 (1994). The supreme court affirmed and stated that the Domestic Violence Act affords relief for plaintiffs if the police were willfully and wantonly negligent in the enforcement of orders of protection. *Calloway*, 168 Ill. 2d 312, 659 N.E.2d 1322.

In *Calloway*, the plaintiff and her husband, Michael Calloway, divorced. On March 20, 1991, the plaintiff obtained a plenary order of protection against Michael. On April 4, 1991, beginning at 5:30 a.m., Michael violated the order of protection by making threatening telephone calls to the plaintiff and claiming he would kill himself in front of their five-year-old daughter. The plaintiff called her father to go pick up her daughter and also called the Effingham County sheriff's department. At 6 a.m. the sheriff drove to the residence, observed the

house, and continued on. At about the same time, Michael called the plaintiff and threatened to kill her father. At 7:30 a.m. the plaintiff called the sheriff's department and informed them that her daughter was safe. The plaintiff continued to report further threatening phone calls from Michael and informed the dispatcher that Michael was in violation of the March 20, 1991, order of protection. The dispatcher acknowledged the order of protection and at 7:50 a.m. advised the plaintiff to call her attorney. At 8 a.m. Michael kidnapped the plaintiff from work at gunpoint and drove off with her in his truck. At 8:39 a.m. a police car found his truck and followed it. Once Michael stopped the truck, the plaintiff got out, at which time Michael fatally shot himself. The plaintiff filed charges against Effingham County and the Effingham County sheriff for emotional distress and trauma.

 *Calloway* established a partial-immunity rule. The supreme court reasoned that the legislative intent behind the Domestic Violence Act was to encourage active intervention on the part of law enforcement officials. The Domestic Violence Act explicitly acknowledged problems with domestic violence and the failure of law enforcement agencies to respond to the problem. 750 ILCS 60/102(1), (3) (West 1994); see *Calloway*, 168 Ill. 2d at 324, 659 N.E.2d at 1328. The supreme court summarized the rule of *Calloway*: "To give effect to the legislature's purposes and intent in enacting the Domestic Violence Act, we believe judicial recognition of a right of action for civil damages is necessary, provided that the injured party can establish that he or she is a person in need of protection under the Act, the statutory law enforcement duties owed to him or her were breached by the willful and wanton acts or omissions of law enforcement officers, and such conduct proximately caused plaintiff's injuries." *Calloway*, 168 Ill. 2d at 324, 659 N.E.2d at 1328. Does the amended complaint in this case fit the definitions, responsibilities, and liabilities contained within the Domestic Violence Act?

 Protected persons include "any person abused by a family or household member." 750 ILCS 60/201(a)(i) (West 1994); see *Calloway*, 168 Ill. 2d at 320, 659 N.E.2d at 1326. Harassment includes but is not limited to: "(i) creating a disturbance at petitioner's place of employment ***; [and] (ii) repeatedly telephoning petitioner's place of employment, home or residence." 750 ILCS 60/103 (7)(i), (7)(ii) (West 1994); see *Calloway*, 168 Ill. 2d at 321, 659 N.E.2d at 1327.

 Article III of the Domestic Violence Act outlines the responsibilities of law enforcement officers in protecting persons under an order of protection. Officers should "make an arrest without warrant if the officer has probable cause to believe that the person has committed or is committing any crime, including but not limited to violation

of an order of protection, \*\*\* even if the crime was not committed in the presence of the officer." 750 ILCS 60/301(a) (West 1994); see *Calloway*, 168 Ill. 2d at 321, 659 N.E.2d at 1326.

■ Section 305 of the Domestic Violence Act limits law enforcement liability to willful and wanton conduct. 750 ILCS 60/305 (West 1994). Section 305 specifically gives law enforcement immunity for acts or omissions that result from good-faith efforts to respond to emergencies and to enforce the Domestic Violence Act. See *Calloway*, 168 Ill. 2d at 322, 659 N.E.2d at 1327. Willful and wanton conduct indicates " 'a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others.' " *Burke v. 12 Rothschild's Liquor Mart, Inc.*, 148 Ill. 2d 429, 443, 593 N.E.2d 522, 532 (1992), quoting Ill. Rev. Stat. 1989, ch. 85, par. 1—210.

■ In the instant case, decedent took all necessary steps to put both Howell and the City's police department on notice of the plenary order of protection. Decedent reported to the police three Howell violations of the order of protection: (1) On June 23, 1996, Howell slashed her tires, and during a photo lineup at the police station decedent even had an eyewitness identify Howell as the culprit; (2) on June 24, 1996, decedent reported Howell watching her at her place of work, Best Inns, from the Hardee's restaurant across the street; and (3) on July 1, 1996, she again reported to the police Howell watching her at work from the Hardee's across the street. Despite the notice, the police took no action.

The question then becomes whether the police failure to act constitutes willful and wanton negligence. Police inaction normally will not rise to the level of willful and wanton because it is an exercise of discretion on the part of the officers and as such is simple negligence. However, the Domestic Violence Act puts an affirmative duty on the police to respond to and investigate complaints.

The complaint sufficiently alleges facts that could result in a determination of willful and wanton conduct on the part of the City's police. The complaint states repeated instances where decedent reported Howell abusing her. Decedent took the proper steps to protect herself by obtaining a plenary order of protection. After having taken the proper steps to establish herself as a person in special need of protection, she again reported repeated stalking on the part of Howell. She even had an eyewitness corroborate her claims of Howell harassing her. Considering the requirements imposed by the Domestic Violence Act, and the holding in *Calloway*, counts III and IV of the amended complaint sufficiently pled facts constituting willful and wanton action.

1160

## III. CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Jefferson County is affirmed in part and reversed in part. The cause is remanded for further proceedings.

Affirmed in part and reversed in part; cause remanded.

RARICK, P.J., and WELCH, J., concur.