Third Division

Filed: December 29, 2004  

No. 1-03-2651

MELISSA MOORE, as Independent Administrator of the Estate of ) Appeal from the 

RONYALE WHITE, Deceased,   ) Circuit Court of

 ) Cook County. 

)

Plaintiff-Appellee, )

)

) No. 02 L 6039 

)

CHICAGO POLICE DEPARTMENT OFFICER CHRISTOPHER )

GREEN, CHICAGO POLICE DEPARTMENT OFFICER )

DONALD E. CORNELIUS, and CITY OF CHICAGO, ) Honorable

) Philip L. Bronstein,

Defendants-Appellants. )    Judge Presiding.

JUSTICE HOFFMAN delivered the opinion of the court:

This is a permissive interlocutory appeal brought pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308).  The certified question before us is whether section 4-102 or 4-107 of the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/4-102, 4-107 (West 2002)) provides absolute immunity to a municipality and its police officers who are alleged to have willfully and wantonly failed to prevent a crime against a victim of domestic violence.  For the reasons which follow, we answer the question in the negative and remand the matter to the circuit court. 

The facts giving rise to this litigation are substantially undisputed.  On May 3, 2002, Ronyale White called "911" requesting police assistance because her husband, Louis Drexel, was in her house.  White informed the operator that Drexel was in violation of an order of protection issued by the circuit court and that he owned a gun.  An emergency telephone dispatcher relayed this information to Chicago police officers Christopher Green and Donald E. Cornelius, and one of the officers acknowledged receipt of the information.  Neighborhood witnesses reported that two police officers drove in a marked car to White's house, but left the scene without investigating or assisting in the matter approximately five minutes before Drexel shot White.  White died as a result of the gunshot wounds on the following day.                    

The plaintiff, Melissa Moore, as independent administrator of White's estate, subsequently filed a complaint against Green, Cornelius, and the City of Chicago (hereinafter referred to as the "City"), asserting wrongful death and survival actions.  She alleged in her fourth-amended complaint
(footnote: 1) that, at the relevant time period, White was a member of the class of persons designed to be protected under the Illinois Domestic Violence Act of 1986 (hereinafter referred to as the "Domestic Violence Act") (750 ILCS 60/101 
et seq
. (West 2002)), and that the officers had a duty under the statute to use all reasonable means to prevent further abuse, harassment, or exploitation of White by, 
inter alia
, providing or arranging transportation for her to a place of shelter or arresting Drexel.  Moore charged that the officers breached the duty of care owed to White through one or more of the following willful and wanton acts or omissions:  traveling to White's house and leaving the scene prior to investigating or offering any assistance with respect to a violation of an order of protection; knowingly rejecting White's plea for assistance; acknowledging receipt of the information relayed by the emergency dispatcher and preventing other officers from assisting White by failing to appear at the scene; failing to "intervene in the situation" at White's home, knowing she was in need of protection; and failing to transport White to a safe location.  

The City filed a motion to dismiss the plaintiff's complaint pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2002)), arguing that, pursuant to sections 4-102 and 4-107 of the Local Governmental and Governmental Employees Tort Immunity Act (hereinafter referred to as the "Tort Immunity Act") (745 ILCS 10/1-101 
et seq. 
(West 2002)), it was absolutely immune from any liability predicated on an alleged failure to prevent a crime or to make an arrest.  
Thereafter, Green and Cornelius joined in the City's motion.  The plaintiff argued in her response that section 305 of the Domestic Violence Act (750 ILCS 60/305 (West 2002)), which provides an exception to law enforcement immunity for conduct which is willful and wanton, controlled her causes of action rather than section 4-102 or 4-107 of the Tort Immunity Act, as asserted by the defendants.      

The circuit court 
denied the defendants' motion to dismiss, agreeing with the plaintiff's position that section 305 of the Domestic Violence Act was the applicable immunity provision.  The City filed a motion for reconsideration of the court's ruling, and Green and Cornelius also joined in that motion.  The circuit court denied the motion to reconsider.  It did, however, find that resolution of the defendants' motion involved a question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from its order may materially advance the ultimate termination of the litigation.  The circuit court set forth in its written order the following question of law involved:

"Does Section 4-102 or 4-107 of the Local Governmental and Governmental Employees Tort Immunity Act provide absolute immunity to a municipality and its police officers who are alleged to have willfully and wantonly failed to prevent a crime against a protected person by their actions or inactions (as specified in ¶ 19 of Counts I and II of the Fourth Amended Complaint at Law attached) under Section[s] 201 and 305 of the Illinois Domestic Violence Act of 1986 [
sic
]?"

The defendants timely filed an application for leave to appeal pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308), which this court granted on October 23, 2003.   

On appeal, we are asked to consider whether the immunity provisions contained in section 4-102 or 4-107 of the Tort Immunity Act (745 ILCS 10/4-102, 4-107 (West 2002)), or the one found in section 305 of the Domestic Violence Act (750 ILCS 60/305 (West 2002)) applies to the instant case.  Because this appeal concerns a question of law certified by the circuit court pursuant to Supreme Court Rule 308 and presents a question of statutory interpretation, our review is 
de novo
.  
Feltmeier v. Feltmeier
, 207 Ill. 2d 263, 266, 798 N.E.2d 75 (2003); 
Lanning v. Harris
, 342 Ill. App. 3d 965, 967, 796 N.E.2d 667 (2003).          

The Tort Immunity Act protects local public entities and public employees from liability arising from the operation of government.  745 ILCS 10/1-101.1 (West 2002).  Specifically, section 4-102 of the Tort Immunity Act provides that:

"Neither a local public entity nor a public employee is liable for failure to establish a police department or otherwise provide police protection service or, if police protection service is provided, for failure to provide adequate police protection or service, failure to prevent the commission of crimes, failure to detect or solve crimes, and failure to identify or apprehend criminals. ***" 745 ILCS 10/4-102 (West 2002).

Section 4-107 provides in pertinent part that "[n]either a local public entity nor a public employee is liable for an injury caused by the failure to make an arrest ***."  745 ILCS 10/4-107 (West 2002).  The plain language of sections 4-102 and 4-107 provide no exception for willful and wanton misconduct.  See 
Hernandez v. Kirksey
, 306 Ill. App. 3d 912, 917, 715 N.E.2d 669 (1999).  

In 1986, the General Assembly enacted the Domestic Violence Act to aid victims of domestic violence and to prevent further violence.  See 750 ILCS 60/102 (West 2002); 
Radke v. Radke
, 349 Ill. App. 3d 264, 268, 812 N.E.2d 9 (2004).  Persons protected under the Act include "any person abused by a family or household member".  750 ILCS 60/201(a)(i) (West 2002).  Article II of the Act specifically addresses the procurement and enforcement of orders of protection, while Article III details the responsibilities of law enforcement officers towards victims of abuse.  Specifically, section 304 provides that, whenever a law enforcement officer has reason to believe that a person has been abused, neglected, or exploited by a family or household member, the officer shall immediately use all reasonable means to prevent further abuse, neglect, or exploitation, including, 
inter alia
: (1) arresting the party committing the abuse; (2) seizing and taking inventory of weapons if there is probable cause to believe that particular weapons were used to commit the incident of abuse; and (3) providing or arranging accessible transportation for the victim of abuse to a medical facility or a nearby place of shelter. (750 ILCS 60/304(a)(1), (2), (7) (West 2002)).  

Section 305 of the Domestic Violence Act provides an immunity provision as follows:  

"Any act of omission or commission by any law enforcement officer acting in good faith in rendering emergency assistance or otherwise enforcing this Act shall not impose civil liability upon the law enforcement officer or his or her supervisor or employer, 
unless the act is a result of willful or wanton misconduct
."  (Emphasis added.)  750 ILCS 60/305 (West 2002).

Thus, unlike sections 4-102 and 4-107 of the Tort Immunity Act which provide absolute immunity, under section 305 of the Domestic Violence Act, law enforcement officers acting in good faith are not immune for willful or wanton misconduct.
(footnote: 2) 

The defendants contend that the misconduct alleged against them falls squarely within the absolute immunities conferred by sections 4-102 and 4-107 of the Tort Immunity Act.   They argue that, by ruling that the immunity provision contained in section 305 of the Domestic Violence Act applied in the instant case, the circuit court "effectively held that the Domestic Violence Act impliedly repealed the absolute immunities in the Tort Immunity Act for failure to prevent a crime, provide adequate police services, and make an arrest".  According to the defendants, the circuit court's flawed approach conflicted with well-established principles of statutory construction that require courts to interpret statutes in a manner which avoids a repeal by implication and give effect to both enactments where reasonably possible to do so.

The plaintiff, on the other hand, argues that the immunity provision in the Domestic Violence Act controls in the instant case because the Act "was intended to be its own creature, independent of other remedies or immunities, and to completely occupy the area of domestic violence."  She maintains that the supreme court's decision in 
Calloway v. Kinkelaar
, 168 Ill. 2d 312, 659 N.E.2d 1322 (1995), is dispositive of the question of whether the immunity provision in the Domestic Abuse Act, rather than the Tort Immunity Act, controls in the instant case.    

In 
Calloway
, the plaintiff filed a complaint against the county and 
a county sheriff seeking to recover damages for injuries she sustained as a result of their alleged willful and wanton or negligent failure to comply with certain statutory duties provided in the Domestic Violence Act.  The defendants filed a motion to dismiss the complaint, arguing that they were insulated from liability under the public duty rule, a common law doctrine under which municipalities and officers are immunized from liability for failing to supply police protection to specific individuals, as distinct from the public in general.  They further argued that the plaintiff failed to plead the elements of the special duty exception to governmental immunity.  The circuit court dismissed the complaint in its entirety, and this court affirmed the dismissal of the negligence counts, but reversed the dismissal of the counts which were premised on willful and wanton violations of duties imposed by the Domestic Violence Act.  After giving effect to the purposes and intent of the legislature in enacting the Domestic Violence Act, the supreme court ultimately held that the Act created specific statutory duties for law enforcement officers, and affirmed the reinstatement of the counts of the complaint alleging willful and wanton misconduct.  
Calloway
, 168 Ill. 2d at 324-26.  In the context of addressing the defendants' arguments with respect to the plaintiff's failure to sufficiently plead the special duty doctrine, the court stated:

 
 "We need not reach [the] defendants' arguments concerning general principles of 
governmental tort immunity 
because the Domestic Violence Act itself provides an express limitation of liability on the part of law enforcement officers and municipalities.  Accordingly, we need look no farther than the language and intent to ascertain whether and to what extent law enforcement officers in the performance of their statutory duties under the Act are immune from liability to plaintiffs injured by acts or omissions of such officers." (Emphasis added.)  
Calloway
, 168 Ill. 2d at 327. 

Subsequently, in 
Sneed v. Howell
, 306 Ill. App. 3d 1149, 716 N.E.2d 336 (1999), 
appeal denied
, 187 Ill. 2d 591, 724 N.E.2d 1275 (2000), the Fifth District of the Appellate Court considered whether a plaintiff alleged sufficient facts to defeat a section 2-615 motion to dismiss where she alleged that the City violated the Domestic Violence Act by willfully and wantonly failing to take action against her husband's repeated infractions of an order of protection.  Relying on the supreme court's decision in 
Calloway
, the 
Sneed
 court held that the plaintiff successfully did so, noting that the immunity provision set forth in the Domestic Violence Act, rather than the Tort Immunity Act, applied in determining whether the City was immune from liability.  
Sneed
, 306 Ill. App. 3d at 1157.   

The defendants acknowledge the supreme court's holding in 
Calloway
 and the Fifth District's holding in 
Sneed
.  They argue, however, that the 
Calloway
 decision at most established that the Domestic Violence Act created a statutory duty, but the supreme court did not address the separate issue of the applicability of a statutory immunity (see 
Arteman v. Clinton Community Unit School District No. 15
, 198 Ill. 2d 475, 487, 763 N.E.2d 756 (2002) (question of existence of a duty and immunity are separate issues)).  In this regard, they maintain that the defendants in 
Calloway
 did not rely on any provision of the Tort Immunity Act in their motion to dismiss, instead relying solely on the common law public duty rule, and the opinion itself is devoid of any mention of section 4-102 or 4-107 of the Tort Immunity Act.  According to the defendants, the holding in 
Sneed
 is likewise deficient, as the court offered little explanation to conclude that the immunity provision in the Domestic Violence Act superceded the applicable provisions in the Tort Immunity Act.  The defendants contend that, even if 
Calloway
 could be read to hold that the Domestic Violence Act controls in this case, it does not remain authoritative in light of the supreme court's subsequent decisions in 
Henrich v. Libertyville High School
, 186 Ill. 2d 381, 712 N.E.2d 298 (1999), 
Tosado v. Miller
, 188 Ill. 2d 186, 720 N.E.2d 1075 (1999), and  
Ferguson v. McKenzie
, 202 Ill. 2d 304, 780 N.E.2d 660 (2001), which they claim support the proposition that "municipalities are entitled to the full scope of the Tort Immunity Act's protection despite the existence of overlapping immunities found in other enactments, and that courts should construe immunity statutes harmoniously whenever possible." 

Before examining the supreme court's decisions in 
Henrich
, 
Tosado
, and 
Ferguson
, however, we set forth certain well-established rules of statutory construction.  It is true, as the defendants suggest, that statutes relating to the same subject should be construed in harmony with each other whenever reasonably possible.  
Williams v. Illinois State Scholarship Comm'n
, 139 Ill. 2d 24, 52, 563 N.E.2d 465 (1990).  However, the primary rule of statutory construction, to which all other rules are subordinate, is that a court should ascertain and give effect to the intent of the legislature.  
Henrich
, 186 Ill. 2d at 386.  The plain language of the statute is the best indicator of the legislature's intent.  
Metzger v. DaRosa
, 209 Ill. 2d 30, 34-35, 805 N.E.2d 1165 (2004).  If the legislative intent can be discerned from the statutory language, there is no need to resort to other tools of statutory construction.  
Land v. Board of Education of City of Chicago
, 202 Ill. 2d 414, 421-422, 781 N.E.2d 249 (2002). It is also a fundamental rule of statutory construction that, where there exists both a general and specific statutory provision relating to the same subject, the specific provision controls and should be applied (
Knolls Condominium Ass'n v. Harms
, 202 Ill. 2d 450, 459, 781 N.E.2d 261 (2002)), unless it appears that the legislature intended to make the general act controlling (
Stone v. Department of Employment Security Board of Review
, 151 Ill. 2d 257, 266, 602 N.E.2d 808 (1992)).  Finally, a later enactment prevails over an earlier one as the later expression of legislative intent.  
Barragan v. Osman Construction Corp
., 352 Ill. App. 3d 33, 37, 815 N.E.2d 842 (2004).  

It is against this backdrop that we examine the cases cited by the defendants.  In 
Henrich
, the supreme court considered whether the immunity provisions in sections 24-24 and 34-84a of the School Code  (105 ILCS 5/24-24, 34-84a (West 1994)), or the immunity provision in section 3-108(a) of the Tort Immunity Act (745 ILCS 10/3-108(a) (West 1994)), controlled in a plaintiff's suit arising out of the defendants' failure to supervise public school activities.  Under the School Code, educators are not immunized from acts involving willful and wanton misconduct, whereas section 3-108(a) of the Tort Immunity Act provides absolute immunity to school districts for acts involving both negligent and willful and wanton misconduct.  Although the plaintiff in 
Henrich
 argued that the more specific provisions of the School Code prevailed over the general provisions of the Tort Immunity Act, the supreme court stated that it need not decide which provision was more specific because the legislative intent could be ascertained from the plain language of section 3-108(a).  In holding that section 3-108(a) of the Tort Immunity Act applied, the supreme court noted that both statutes were passed only two days apart and, therefore, should be interpreted with reference to each other.  
Henrich
, 186 Ill. 2d at 392.  The court stated that section 24-24 of the School Code and section 3-108(a) of the Tort Immunity Act each stood "in its own sphere," as section 24-24 applies to both private and public schools, whereas the Tort Immunity Act applies only to public schools, therefore illustrating the legislature's intent to grant public school teachers and districts greater immunity that their private counterparts.  
Henrich
, 186 Ill. 2d at 392
.   

That same year, the supreme court in 
Tosado
 considered whether the two-year limitations period in section 13-212(a) of the Code of Civil Procedure (Code) (735 ILCS 13-212(a) (West 1992)) or the one-year limitations period in section 8-101 of the Tort Immunity Act (745 ILCS 10/8-101 (West 1996)) applied to a medical malpractice claim against a county hospital.  In a severely split decision, Justice Miller, writing for the plurality, determined that resolution of this question rested on which of the two statutes applied more specifically.  
Tosado
, 188 Ill. 2d at 191-92.  After looking at the purposes of the Tort Immunity Act, Justice Miller focused on the more specific category of defendants and held that 
section 8-101 of the Tort Immunity Act, which covers claims only against local entities and their employees, was more specifically applicable than section 13-212 of the Code, which applies to a broader category of defendants.  
Tosado
, 188 Ill. 2d at 194-95.  In their separate concurrences, Chief Justice Freeman and Justice Heiple disagreed that the focus should be on the nature of the defendants, but stated that, "to the extent that section 8-101 is more general than section 13-212(a), this is one of those instances where the legislature intended to make the general act controlling."  
Tosado
, 188 Ill. 2d at 199 (Heiple, J., specially concurring; Freeman, C.J., also specially concurring and joining in Justice Heiple's special concurrence on this point).  In her dissent, in which Justice Rathje joined, Justice McMorrow concluded that 13-212(a) of the Code controlled because it applied more specifically based on the nature of the cause of action.  
Tosado
, 188 Ill. 2d at 206 (McMorrow, J., dissenting, joined by Rathje, J.).  

Subsequent to its decision in 
Tosado
, the supreme court in 
Ferguson
 was asked to consider whether the one-year limitations period in section 8-101 of the Tort Immunity Act took precedence over section 13-212(b) of the Code (735 ILCS 5/13-212(b) (West 1994)), which requires a minor to bring a medical malpractice action 
within eight years of an injury-causing act or omission and before his or her 22
nd
 birthday.  Relying on the reasoning in 
Tosado
, the supreme court in 
Ferguson
 noted that the legislative intent of section 13-212(b) is to reduce the period of potential liability and restrict a minor's ability to sue, while the intent of section 8-101 is to encourage early investigation of claims against a local governmental entity so as to permit prompt settlements of meritorious claims and allow governmental entities to plan their budgets in light of potential liabilities.  
Ferguson
, 202 Ill. 2d at 312-313.  Giving effect to the underlying polices of both statutes, the supreme court held that section 13-212(b) applied insofar as the plaintiff was a minor when her cause of action accrued, and that the one-year limitations period in section 8-101 of the Tort Immunity Act also applied and began to run when the plaintiff reached 18 years of age.  
Ferguson
, 202 Ill. 2d at 312.  See also 
Paszkowski v. The Metropolitan Water Reclamation District of Greater Chicago
, No. 96220 (Ill. November 18, 2004) (adopting rationale from 
Ferguson
).    

Relying on the decisions in 
Henrich
, 
Tosado
, and 
Ferguson
, the defendants argue that the immunity provisions in the Domestic Violence Act and the Tort Immunity Act can easily be harmonized in the instant case.  Their argument in this regard is two-fold.  The defendants first contend that the immunities in each statute are available to "different, if overlapping, groups of defendants", as the Domestic Violence Act confers immunity on any "law enforcement officer" (see 750 ILCS 60/305 (West 2002)), whereas the Tort Immunity Act protects only "local public entities and public employees," (see 745 ILCS 10/1-101.1 (West 2002)), a class that "does not include the State or any office, officer, department, division, bureau, board, commission, university or similar agency of the State" (745 ILCS 10/1-206 (West 2002)).  According to the defendants, the immunity provided in the Domestic Violence Act would be available to law enforcement officers who are outside the scope of the Tort Immunity Act, such as the Illinois State Police and law enforcement officials employed by various state universities.  The defendants also contend that the immunities in the two statutes differ in scope.  On this point, they maintain that a claim against a law enforcement officer falls within sections 4-102 and 4-107 only if it is based on a failure to prevent a crime, provide adequate police protection or service, or make an arrest.  According to the defendants, if a police officer transporting a victim was involved in a car accident and was sued either by the driver or passenger of the other vehicle, immunity under section 4-102 or 4-107 would be unavailable, in which case section 305 of the Domestic Violence Act, which immunizes negligence in "enforcing this Act", would apply in that situation.  Based on these scenarios, the defendants maintain that the statutes can be construed to supplement each other, as the supreme court did in 
Henrich
, 
Tosado
, and 
Ferguson
. 

The supreme court's overarching concern in 
Henrich
, 
Tosado
, and 
Ferguson
, however, was to ascertain and give effect to the intent of the legislature; the primary rule of statutory construction, to which all other rules are subordinate.  
Henrich
, 186 Ill. 2d 381 at 386; 
Tosado
, 188 Ill. 2d at 195; 
Ferguson
, 202 Ill. 2d at 311.  To this end, our supreme court in 
Calloway
 considered at length the stated purposes of the Domestic Violence Act and the intent behind section 305 providing limited immunity.  The Act specifically states that it should be "liberally construed and applied to promote its underlying purposes" (750 ILCS 60/102(1) (West 2002)), which, 
inter
 
alia
, are to:  (1) recognize domestic violence as a serious crime against the individual and society (750 ILCS 60/102(1) (West 2002)); (2) recognize that the legal system has ineffectively dealt with family violence in the past (750 ILCS 60/102(3) (West 2002)); (3) support the efforts of victims of domestic violence to avoid further abuse by promptly entering and diligently enforcing court orders which prohibit abuse, and when necessary, reduce an abuser's access to the victim (750 ILCS 60/102(4) (West 2002)); (4) clarify the responsibilities and support the efforts of law enforcement officers to provide immediate, effective assistance and protection for victims of domestic violence (750 ILCS 60/102(5) (West 2002)); and (5) expand the civil and criminal remedies for victims of domestic violence (750 ILCS 60/102(6) (West 2002)).  The supreme court in 
Calloway
 noted that these stated purposes, coupled with the statutory duties imposed by section 304 of the Act, show the General Assembly's intent to encourage active intervention on the part of law enforcement officials in cases of intrafamily abuse.  
Calloway
, 168 Ill. 2d at 323-24.  With respect to the legislative intent behind section 305, specifically, the supreme court in 
Calloway
 stated:

"The language of section 305 plainly intends that officers are not to be held civilly liable for mere negligence in the good-faith performance of their duties under the Act.  However, the express limitation on liability does not apply if the act or omission in question is a result of 'willful or wanton misconduct.'  We believe that this partial immunity of law enforcement agents is a direct expression of legislative intent to reconcile the strongly worded purposes of the Act – primarily the protection of and assistance to victims of abuse – with the recognition that officers performing their legal duties should not be held civilly liable when their efforts to enforce the Act fall short, 
unless
 the conduct in question can be viewed as willful or wanton."  (Emphasis in original).  
Calloway
, 168 Ill. 2d at 322.

The supreme court's interpretation of the Domestic Violence Act in 
Calloway
 makes clear that the legislature intended the Act to address a very specific problem; namely, the protection of and assistance to victims of domestic abuse.  When the supreme court has interpreted a statute, that interpretation is considered as part of the statute itself unless and until the legislature amends it contrary to the interpretation.  
Miller v. Lockett
, 98 Ill. 2d 478, 483, 457 N.E.2d 14 (1983).  Based on the strongly worded purposes of the Act, coupled with the supreme court's construction of section 305 in 
Calloway
, we believe that, in enacting the Domestic Violence Act, the legislature carved out a separate sphere of duties and liabilities for law enforcement officials.  The defendants assert that the legislature could not have intended this construction because section 2-101 of the Tort Immunity Act exempts certain listed statutory causes of action from its reach, but the Domestic Violence Act was not added as one of them when the Tort Immunity Act was amended (see 745 ILCS 10/2-101 (2002)).  The defendants do not claim, however, and we do not believe that section 2-101 of the Tort Immunity Act provides an exhaustive list of exemptions.  Nor can we ignore the strongly worded language of the legislature in enacting the Domestic Violence Act.          

Finally, the defendants argue that there are significant policy reasons which should preclude application of section 305 of the Domestic Violation Act to this case.  They contend that sections 4-102 and 4-107 of the Tort Immunity Act recognize that municipalities should be encouraged to provide police protection and services and arrest offenders, unencumbered by the threat of massive damages liability "when the inevitable happens."  The defendants maintain that, if exposed to potential liability for any domestic violence incident, local police would have to prioritize every domestic violence call over other emergency calls, no matter how serious those other calls may be.  According to the defendants, "[t]he financial responsibility for [the] horrific, intentional criminal conduct of third parties should not be imposed on local governments, which were not responsible for those acts, but simply failed to prevent them from happening."  We find that this argument rings hollow in light of the stated purposes of the Domestic Violence Act, which are to recognize domestic violence as a serious crime against individuals and society, recognize that the legal system has ineffectively dealt with family violence in the past, and expand the civil and criminal remedies for victims of domestic violence.  Further, a plaintiff seeking relief under the Act has a heavy burden to carry, as the supreme court made clear in 
Calloway
: 

"[W]e believe judicial recognition of a right of action for civil damages is necessary, 
provided that 
the injured party can establish that he or she is a person in need of protection under the Act, the statutory law enforcement duties owed to him or her were breached by willful and wanton acts or omissions of law enforcement officers, and such conduct proximately caused [the] plaintiff's injuries." (Emphasis added.)  
Calloway
, 168 Ill. 2d at 324.     

Based on the plain language of the Domestic Violence Act, the supreme court's construction of the stated purposes of the Act, in particular section 305, in 
Calloway
, and the Fifth District's subsequent decision in 
Sneed
, we hold that section 305 providing partial immunity applies in this case, and, therefore, answer the certified question in the negative.    

Certified question answered; cause remanded.

HARTMAN and SOUTH, JJ., concur.

FOOTNOTES
1: 
Moore's original complaint also named as defendants certain emergency telephone operators, a dispatcher, and an unknown Chicago police sergeant.  She subsequently dismissed her claims against those defendants and amended her complaint accordingly.  

2:  We note that section 2-202 of the Tort Immunity Act provides that a "public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." (745 ILCS 10/2-202 (West 2002)).  Moore, however, does not argue that this section is applicable in the instant case.