DIETHARD BEYER, as Special Adm'r of the Estate of Margaret I. Wilson, Plaintiff-Appellant, v. THE CITY OF JOLIET *et al.*, Defendants-Appellees (David C. Wilson, Defendant).

Third District   No. 3—08—0023

Opinion filed June 2, 2009.

CARTER, J., specially concurring.

Benjamin A. Crane (argued), of Coplan & Crane, L.L.C., of Oak Park, for appellant.

Kimberly Fladhammer (argued), of Joliet, for appellees City of Joliet, Robert Kerwin, David Remer, and Thomas Wilson.

JUSTICE SCHMIDT delivered the opinion of the court:

Margaret Wilson was shot and killed by her husband, David C. Wilson. Diethard Beyer, as special administrator of the estate of Margaret Wilson, brought suit against the city of Joliet and three Joliet police officers (defendants). Decedent's husband, David, also named in the complaint, is not involved in this interlocutory appeal. Plaintiff alleged that the death of Margaret was the result of defendants' willful and wanton breach of their duties under the Illinois Domestic Violence Act of 1986 (750 ILCS 60/101 (West 2004)). Defendants' motion to dismiss attacked plaintiff's third amended complaint in two ways. Defendants argued that: (1) plaintiff failed to plead facts to show decedent was a protected person, specifically suggesting that plaintiff must have already obtained an order of protection; and (2) plaintiff failed to allege any willful and wanton acts or omissions on behalf of the police officers. The circuit court of Will County granted defendants' motion to dismiss under section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 2006)). Pursuant to Supreme Court Rule 304(a), the trial court found no just reason to delay enforcement or appeal. 155 Ill. 2d R. 304(a).

On appeal, the predominate issue is whether an order of protection is a necessary condition precedent to a suit against police under the Domestic Violence Act. We hold that it is not.

We reverse and remand.

BACKGROUND

Plaintiff's third amended complaint alleges the following facts.

On July 20, 2004, Margaret Wilson called the Joliet police department on multiple occasions reporting that her husband, David Wilson, had repeatedly threatened her with physical harm and mentally abused her by verbally reminding her of the presence of guns in the

house. Additionally, Margaret flagged down a Joliet police officer, advised him of the abuse, and asked for assistance. Joliet police officers responded to Margaret's calls numerous times during the hours before her death. However, each time they left her home without investigation or assistance to Margaret. Furthermore, defendant police officers were told that there were weapons in the home, and despite being given unfettered access to the home, they chose not to investigate the presence of those weapons. In the early morning hours of July 21, 2004, David shot and killed Margaret in their home.

Defendants filed their motion to dismiss plaintiff's third amended complaint pursuant to section 2—619. 735 ILCS 5/2—619 (West 2004). The circuit court entered a dismissal with prejudice, finding that, as a matter of law, "in order to be a protected person under the Domestic Violence Act a person must obtain an order of protection or take steps to obtain protection under the Act." See 735 ILCS 5/2—619 (West 2006).

## ANALYSIS

Plaintiff contends that he pled sufficient facts to establish that his decedent was a protected person under the Domestic Violence Act (the Act). As this contention raises a question of law, the applicable standard of review is *de novo. Advocate Health & Hospitals Corp. v. Bank One, N.A.*, 348 Ill. App. 3d 755, 759, 810 N.E.2d 500, 505 (2004); *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 368, 799 N.E.2d 273, 278 (2003).

■ Generally, Illinois police officers enjoy absolute immunity for failure to provide police protection, prevent the commission of a crime, or make an arrest. 745 ILCS 10/4—102, 4—107 (West 2004). However, in 1986, the General Assembly enacted the Act, which provides a special duty exception to governmental immunity and deals specifically with cases where public officials fail to protect victims of domestic abuse. *Calloway v. Kinkelaar*, 168 Ill. 2d 312, 659 N.E.2d 1322 (1995).

Section 305 of the Act limits law enforcement liability to willful and wanton conduct. 750 ILCS 60/305 (West 2004). The supreme court in *Calloway* explained that an injured party can recover under the Act provided that "the injured party can establish that he or she is a person in need of protection under the Act, the statutory law enforcement duties owed to him or her were breached by the willful and wanton acts or omissions of law enforcement officers, and such conduct proximately caused plaintiff's injuries." *Calloway*, 168 Ill. 2d at 324, 659 N.E.2d at 1328.

## I. Order of Protection

Plaintiff first argues that Margaret was a protected person under the Act, despite not having an order of protection in place. We note at

the outset that this argument mischaracterizes the trial court's ruling. The trial court found, as a matter of law, that in order to be protected under the Act, a victim must either: (1) obtain an order of protection; or (2) take steps to be protected under the Act. Nonetheless, we will address plaintiff's and defendants' arguments on appeal regarding whether an order of protection is a necessary prerequisite to protection under the Act.

■ Plaintiff argues that the statutory language is the best indication of the legislative intent of the Act. *Bonaguro v. County Officers Electoral Board*, 158 Ill. 2d 391, 397, 634 N.E.2d 712, 714 (1994); *People v. Olsson*, 335 Ill. App. 3d 372, 374, 780 N.E.2d 816, 818 (2002). Section 201(a) of the Act states:

"(a) The following persons are protected by this Act:
(i) any person abused by a family or household member."
750 ILCS 60/201(a) (West 2004).

When addressing the application of the Act, the Illinois Supreme Court specifically stated that statutory language "must be afforded its plain, ordinary, popularly understood meaning. [Citation.] When the language is unambiguous, the statute must be applied as written without resorting to other aids of construction." *Moore v. Green*, 219 Ill. 2d 470, 479, 848 N.E.2d 1015, 1020 (2006). Therefore, under the plain language of the Act as set forth above, plaintiff contends that obtaining a protective order is not a prerequisite to bringing a suit under the Act.

Defendants argue that in order to fall within the Act's limited exception to immunity, the plaintiff must qualify as a protected person by first obtaining an order of protection. Defendants claim their position is supported by the rulings and reasoning in *Calloway v. Kinkelaar*, 168 Ill. 2d 312, 659 N.E.2d 1322 (1995), *Moore v. Green*, 219 Ill. 2d 470, 848 N.E.2d 1015 (2006), and *Sneed v. Howell*, 306 Ill. App. 3d 1149, 716 N.E.2d 336 (1999).

In *Calloway*, the court found that the plaintiff was a person protected under the Act because she was abused by a family member and had obtained, in accordance with the procedures outlined in article II of the Act, an emergency and plenary order of protection based on her husband's abuse and harassment. *Calloway*, 168 Ill. 2d at 326, 659 N.E.2d at 1329. Similarly, in *Moore*, the court found that the city police owed the victim a duty where the victim called 911 after her husband violated an order of protection by entering her home. Police officers arrived at the scene. However, they pulled away after a few minutes without providing any assistance. The husband shot the victim five minutes after the police left the scene. *Moore*, 219 Ill. 2d at 474, 848 N.E.2d at 1018. Finally, in *Sneed v. Howell*, 306 Ill. App. 3d

at 1159, 716 N.E.2d at 343, the court found that the victim was owed a special duty because "[d]ecedent took the proper steps to protect herself by obtaining a plenary order of protection." The *Sneed* court emphasized that there are certain steps that have to be taken in order to become a protected person. Defendants argue that *Sneed* suggests that obtaining an order of protection was an essential step. *Sneed v. Howell*, 306 Ill. App. 3d at 1159, 716 N.E.2d at 343.

Each appellate and supreme court decision cited by the defendants involved a scenario where the victim had an order of protection in place. These decisions do not address whether the absence of an order of protection, *ipso facto*, prevents a victim from recovering under the Act. This appears to be an issue of first impression.

Plaintiff argues that requiring a victim to obtain an order of protection in order to proceed under the Act is contrary to the express language of section 304(a)(7). 750 ILCS 60/304(a)(7) (West 2004). Section 304(a)(7) of the Act creates a duty upon law enforcement personnel to take a victim of abuse away from the scene in order to obtain an order of protection. Specifically, section 7 states that when an officer has reason to believe that a person has been abused, neglected, or exploited by a family or household member, the officer shall immediately use all reasonable means to prevent further abuse, neglect, or exploitation, including:

"[A]fter the close of court business hours, providing or arranging for transportation for the victim (and, at the victim's request, any minors or dependents in the victim's care) to the nearest available circuit judge or associate judge so the victim may file a petition for an emergency order of protection under subsection (c) of Section 217." 750 ILCS 60/304(a)(7) (West 2004).

Plaintiff argues that implicit in this requirement is that the victim of abuse not already have an order of protection. We agree.

It is well established that the primary goal of statutory interpretation is to give effect to the intent of the legislature. *Illinois Department of Healthcare & Family Services v. Warner*, 227 Ill. 2d 223, 229, 882 N.E.2d 557, 560 (2008). The most reliable indicator of the legislature's objectives in enacting a particular law is the language of the statute. *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 504, 732 N.E.2d 528, 535 (2000).

The legislature gave the courts clear guidance in construing the statute. "This Act shall be liberally construed and applied to promote its underlying purposes." 750 ILCS 60/102 (West 2004). In addition to the substantive provisions of the Act, the legislative purpose is expressly stated in sections 102(1) through (6). 750 ILCS 60/102(1) through (6) (West 2004). The Act was framed to create greater recogni-

tion of the seriousness of domestic violence on individual victims and families, and to prevent the escalating violence that so many times results in intrafamily homicide. 750 ILCS 60/102(1) (West 2004). Further, the legislators intended the Act to recognize the past failure of law enforcement to deal effectively with family violence, to adequately acknowledge the seriousness of the crime, and to properly protect and serve its many victims. 750 ILCS 60/102(3) (West 2004). The Act highlights the support law enforcement shall show to victims in both *assisting victims in obtaining protective orders* and enforcing such orders when in place. 750 ILCS 60/102(4), 304(a)(7) (West 2004). Finally, the Act states its intention to expand the civil remedies for victims of domestic violence. 750 ILCS 60/102(6) (West 2004).

We find that obtaining an order of protection is not a condition precedent to pursuing a claim under the Act. Such a requirement would be contrary to the express language of the Act and would defeat the legislative intent. This is evidenced by sections 102(1) through (6) and the express language in both section 304(a)(7) ("the officer shall immediately use all reasonable means to prevent further abuse, neglect, or exploitation, including: *** after the close of court business hours, providing or arranging for transportation for the victim *** to the nearest available circuit judge or associate judge so the victim may file a petition for an emergency order of protection"), and section 201(a) ("[t]he following persons are protected by this Act: (1) any person abused by a family or household member"). 750 ILCS 60/201(a), 304(a)(7) (West 2004). To hold otherwise would render section 304(a)(7) of the Act meaningless.

## II. Steps to Obtain Protection

We now address the second prong of the trial court's finding: whether plaintiff "took steps to obtain protection under the Act." Defendants argue that *Sneed* tells us that the step one must take to secure protection under the Act is to obtain an order of protection. That is, defendants argue that the second prong of the trial court's finding was simply a restatement of the first prong. For reasons set forth above, we reject this argument.

Again, the Illinois Supreme Court in *Calloway* made it clear that in order to recover under the Act, a victim must first show she was in need of protection. *Calloway*, 168 Ill. 2d at 324, 659 N.E.2d at 1328. In the case at bar, we believe plaintiff pled sufficient facts that, if proven, would invoke the protections of the Act. The complaint alleged that the victim called the police several times and told them her husband was threatening her with physical harm and mentally abusing her by reminding her of the presence of guns in the house. Margaret alleg-

edly flagged down an officer and asked for assistance. Furthermore, during the hours before her death, three different police officers responded to her calls for help. Each time, the officers left without any investigation into the presence of the weapons in the home, without offering to either help decedent obtain an order of protection or take her to a place of safety.

### III. Willful and Wanton

Defendants also argue that plaintiff fails to allege facts constituting a willful and wanton breach of their duties under the Act. The facts pled in this complaint essentially allege that, notwithstanding Margaret's obvious need for help, the police did nothing in response to decedent's calls for help immediately before her death, other than to show up and leave. We believe that this alleged absence of action on behalf of the officers, in light of information available to the officers, pleads a breach of their duties under the Act. That is, the complaint pleads a case of willful and wanton failure to act on the part of the police.

Although the facts pled are only allegations at this stage of the proceedings, this case is before us on the pleadings; the other side of the story has yet to be heard. Our supreme court has very recently made it clear that the Act is not implicated merely because someone is a protected party. The Act does not impose a general, open-ended duty to protect victims of domestic violence. *Lacey v. Village of Palatine*, 232 Ill. 2d 349, 365 (2009). The police are not the guarantors or insurers of the safety of every victim of domestic abuse. Therefore, we express no opinion as to whether plaintiff will ultimately be able to invoke the limitations on immunity provided by the Act.

Accordingly, we find that the trial court erred when it dismissed the complaint. We believe the facts pled by plaintiff, if proven, are sufficient to establish plaintiff's decedent as a person "in need of protection" under the Act. *Calloway*, 168 Ill. 2d at 324, 659 N.E.2d at 1328.

### CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Will County is reversed and remanded for further proceedings.

Reversed and remanded.

O'BRIEN, P.J., concurs.

JUSTICE CARTER, specially concurring:

I concur with the majority opinion. A person protected under the Act is any person abused by a family or household member (750 ILCS

60/201(a)(i) (West 2004)), and law enforcement has a duty to act whenever an officer has reason to believe that a person has been abused (750 ILCS 60/304(a) (West 2004)). I specially concur to add, although not necessary under the facts of this case, that the definition of a person protected under the Act would include those occasions when someone other than the victim alerts law enforcement of the abuse.