FIRST DIVISION
February 4, 2008

No. 1-06-2842

| | |
|---|---|
| SUSAN H. LACEY, as Special Adm'r and Special Representative of the Estate of MARY E. LACEY, Deceased; and HELENA KOLBASKY, as Special Adm'r and Special Representative of the Estate of MARGARET BALLOG, Deceased, | ) Appeal from<br>) the Circuit Court<br>) of Cook County<br>)<br>)<br>) |
| Plaintiffs-Appellants, | ) |
| v. | )<br>) No. 03 L 15332 |
| THE VILLAGE OF PALATINE, a Municipal Corporation, PALATINE POLICE DEPARTMENT DETECTIVE B. BERTNIK, NO. 203; PALATINE POLICE DEPARTMENT DETECTIVE TULLY, PALATINE POLICE DEPARTMENT DETECTIVE KRAEGER; VILLAGE OF GLENVIEW, a Municipal Corporation; GLENVIEW POLICE DEPARTMENT SERGEANT JOHNSON; and GLENVIEW POLICE DEPARTMENT DETECTIVE MICHAEL MAZURKIEWICZ, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Honorable |
| Defendants-Appellees. | ) Kathy M. Flanagan,<br>) Judge Presiding. |

PRESIDING JUSTICE CAHILL delivered the opinion of the court:

Plaintiffs Susan H. Lacey and Helena Kolbasky appeal the trial court's dismissal of their second amended complaint under section 2-619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(9) (West 2006)). Plaintiffs sued the municipalities and police officers of Palatine and Glenview, defendants, after the murders in 2004 of Mary E. Lacey (Mary or Mary Lacey) and her mother Margaret Ballog (Ballog) by Steven Zirko (Zirko). Plaintiffs claimed defendants

violated the Illinois Domestic Violence Act of 1986 (Domestic Violence Act or Act) (750 ILCS 60/101 *et seq.* (West 2006)) by failing to protect the victims after learning of Zirko's plan to have Mary murdered. Defendants' motion to dismiss relied on immunity under the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/4-101 *et seq.* (West 2006)) and the Domestic Violence Act (750 ILCS 60/305 (West 2006)).

Plaintiffs' 76-count complaint made allegations against the City of Chicago and its detective, Darryl Daily; the Village of Palatine and its detectives, Brian Bertnik, Tully and Kraeger (first names not of record); and the Village of Glenview and its sergeant, Stefan Johnson and detective, Michael Mazurkiewcz.

The trial court granted defendants' motion to dismiss, concluding: (1) the officers were not executing the Domestic Violence Act when they investigated Zirko's murder-for-hire plot against Mary; and (2) Ballog was not a person protected under the Act. Plaintiffs appeal the dismissal of the counts in their complaint under the Domestic Violence Act. Plaintiffs do not appeal the dismissal of the City of Chicago and Detective Daily. Nor do plaintiffs appeal the dismissal of claims under the Wrongful Death Act (740 ILCS 180/2.1 (West 2006)) or the Illinois Survival Act (755 ILCS 5/27-6 (West 2006)).

The following facts are alleged in the complaint. Mary Lacey and Zirko began living together in 1995. A year later, Zirko began a pattern of abuse. Mary obtained emergency protective orders against Zirko in 2002 and 2003. A plenary protective order entered in December 2003 was to have remained in effect until December 2005. It prohibited Zirko from physically abusing, stalking, harassing, interfering with the personal liberty of or intimidating

2

Mary. The order also named Susan Lacey, Raymond Lacey, Dylan Zirko and Zachary Zirko as protected persons. The order did not name Ballog as a protected person or contain a general provision for the protection of Mary's family.

In October 2004, Zirko's chiropractor, Chad Larsen, whose office was in Palatine, contacted the Chicago police department. Larsen reported Zirko had asked if Larsen knew anyone Zirko could hire to kill Mary or break her legs. Zirko later told Larsen that Zirko's father had agreed to kill Mary. Zirko asked Larsen to start charging Zirko's credit card for chiropractic services on a regular basis to establish a pattern to show Zirko was in Larsen's office at certain times.

On October 14, 2004, Chicago police detective Daily disclosed the information provided by Larsen to Palatine police detectives Bertnik and Tully. The next day, Bertnik and another Palatine detective, Kraeger, went to the Wilmette police department. They obtained police reports pertaining to Mary and Zirko from February 2002 to July 2003. Mary lived in Wilmette during that time. The complaint alleged that the reports contained a significant history of domestic battery and violations of protective orders by Zirko. All orders of protection were entered in the Law Enforcement Automated Data System (LEADS) as required by the Domestic Violence Act (750 ILCS 60/302 (West 2006)). Bertnik and Kraeger reported their investigation to Glenview police sergeant Johnson and detective Mazurkiewicz. Mary was living in Glenview at the time. Bertnik called Mary, told her she was in danger and asked her to come immediately to the Glenview police station. There, Bertnik and Kraeger told Mary that Zirko planned to murder her. Mary told the officers that Zirko was capable of hurting her and her family. The

3

Palatine and Glenview officers then went to Mary's home to further discuss the investigation.

The complaint went on to allege: "At this time the Palatine and Glenview police officers reported they were not going to arrest Zirko but assured Mary and her family that [the officers] would protect [them]." The officers promised a 24-hour watch over Mary, including placing a police officer outside her home when she was at home and having an officer follow her when she left her home. Nothing in plaintiffs' pleadings or defendants' motion to dismiss states that the officers told Mary the protection would end at a certain time.

On October 21, 2004, Bertnik interviewed Zirko. Zirko refused to answer questions but his attorney said Zirko had no intention of harming or hiring anyone to harm Mary. Defendants did not arrest Zirko. Nothing in the record shows that defendants informed Mary when they closed the investigation.

The complaint alleged:

"43. Upon information and belief, the [d]efendant police officers failed to investigate this matter further after October 22, 2004, and failed to arrest Zirko.

44. From October 22, 2004 to December 13, 2004, Mary Lacey repeatedly called the Palatine and Glenview police departments requesting that they either arrest Zirko or provide the police supervision and protection *** they previously promised."

The complaint, in separate sections for each officer, made essentially the same allegations against each one:

"172. At all relevant times herein, Mary Lacey was a member of the class

4

intended to be protected by the Domestic Violence Act and entitled to special protection [under this Act] and had been so found by virtue of the Order of Protection she obtained on December 9, 2003.

173.   [The officers] knew that Zirko was in violation of the Order of Protection, [they] had been advised and informed of all facts necessary to take immediate action against Zirko, and [they] had probable cause to arrest Zirko [under] the Domestic Violence Act upon receiving that information in October 2004.

174.   At all relevant times herein, [the officers] had a duty under the statute to immediately use all reasonable means to prevent further abuse, harassment or exploitation, including but not limited to, arresting Zirko or providing police supervision and protection.

175.   [The officers] breached this duty to Mary Lacey by one or more of the following willful and wanton acts and/or omissions:

   a. Failing to arrest Zirko in light of his violation of an Order of Protection;

   b. Failing to detain and/or arrest Zirko despite learning of his plan to murder Mary Lacey;

   c. Failing to provide police supervision and protection after learning of the Zirko plan to murder Mary Lacey, after deciding not to arrest Zirko, and after promising 24-hour surveillance and protection of

5

Mary Lacey;

     d.  Failing to further investigate the Zirko murder plan;

     e.  Knowingly rejecting Mary Lacey's pleas for help to respond to complaints that she feared for her life;

     f.  Failing to arrange for Mary Lacey's transportation to a safe place when informed that Mary Lacey was in need of protection; and

     g.  Failing to intervene after learning that Mary Lacey was in need of protection;

176.  As a direct and proximate result of the *** willful and wanton conduct of [the officers], Mary Lacey died on December 13, 2004."

Kolbasky made essentially the same allegations against the individual officers on Ballog's behalf.  In addition, Kolbasky alleged:

"215.  The Domestic Violence Act defines 'persons protected by this Act' as including 'any persons abused by a family or household member.'

216.  At all relevant times herein, Ballog was a member of the class intended to be protected by the Domestic Violence Act and entitled to special protection [under] the Domestic Violence Act and had been so found by virtue of the Order of Protection Mary Lacey obtained on December 9, 2003, on behalf of her family."

The complaint alleged that the villages of Palatine and Glenview were liable under the Domestic Violence Act based on a theory of *respondeat superior*.  Plaintiffs claimed the villages

6

had a duty:

>"through [their] agents and employees acting within the scope of their employment, to adhere to the mandates of the Domestic Violence Act, refrain from willful and wanton conduct in the enforcement and execution of the law, including refraining from a deliberate indifference to or conscious disregard for the safety of others, including [decedents]."

The trial court granted defendants' motion to dismiss the complaint in a written order:

>"[A]ll of the [d]efendants are immune from liability for the Domestic Violence Act claims by the immunities afforded under section[s] 4-102 and 4-107 of the Tort Immunity Act. Section 305 of the Domestic Violence Act, which imposes liability on police officers for willful and wanton conduct in the execution and enforcement of the Act, does not apply to override the immunities afforded under the Tort Immunity Act as the [d]efendants were not engaged in the execution or enforcement of the Domestic Violence Act."

The court also dismissed the counts as to Ballog, finding she "was not covered by the order of protection and thus, there could be no claim by her for violation of the Act."

Plaintiffs contend on appeal that the trial court erred because: (1) the Tort Immunity Act does not override the exception to immunity in the Domestic Violence Act (750 ILCS 60/305 (West 2006)); (2) their complaint sufficiently alleged willful and wanton acts and omissions by defendants in enforcing the Domestic Violence Act; and (3) defendants owed a duty to Ballog under the Domestic Violence Act.

Defendants argue that we should affirm the dismissal because: (1) defendants are immunized absolutely under sections 4-102 and 4-107 of the Tort Immunity Act (745 ILCS 10/4-102, 4-107 (West 2006)); (2) section 305 of the Domestic Violence Act (750 ILCS 60/305 (West 2006)) does not override this immunity; (3) Ballog was not protected by the Domestic Violence Act; (4) the officers' failure to arrest Zirko was not willful and wanton conduct because the officers lacked probable cause; and (5) plaintiffs did not allege that the officers were enforcing the Domestic Violence Act on the day of the murders. The Palatine defendants also argue that they could not have been enforcing the Domestic Violence Act at the time of the murders because they had closed their investigation of the alleged murder-for-hire plot in October 2004. They also claim they lacked jurisdiction because neither Mary Lacey nor Ballog lived in Palatine.

The Chiefs of Police of the Intergovernmental Risk Management Agency and South Suburban Chiefs of Police argue in an *amicus* brief that defendants owed no duty to plaintiffs under the Domestic Violence Act at the time of the murders. The *amici* argue that because the Domestic Violence Act was not triggered, defendants are shielded by sections 4-102 and 4-107 of the Tort Immunity Act (745 ILCS 10/4-102, 4-107 (West 2006)). The *amici* argue that the "duty" element of a negligence claim cannot be established because the duties in the Domestic Violence Act are "short-term procedures aimed at addressing specific and discrete instances of abuse." The *amici* contend that defendants had no duty to provide "unlimited 24-hour surveillance" and defendants' actions did not rise to the level of willful and wanton conduct.

A dismissal under section 2-619(a)(9) of the Code is proper when the claim is barred by affirmative matter that defeats the claim or avoids its legal effect. 735 ILCS 5/2-619(a)(9) (West

2006). A section 2-619(a)(9) motion may be used only to assert one of nine specific defenses. Barber-Colman Co. v. A&K Midwest Insulation Co., 236 Ill. App. 3d 1065, 1072-73, 603 N.E.2d 1215 (1992). Such a motion cannot be used to challenge the factual sufficiency of a complaint. Barber-Colman Co., 236 Ill. App. 3d at 1073. The appropriate pleading to challenge a complaint's factual sufficiency is a motion for summary judgment. Barber-Colman Co., 236 Ill. App. 3d at 1073. The standard of review of a section 2-619 dismissal is *de novo*. Van Meter v. Darien Park District, 207 Ill. 2d 359, 368, 799 N.E.2d 273 (2003).

Immunity is an affirmative matter that will support a dismissal under section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2006)). Van Meter, 207 Ill. 2d at 367. The government entity asserting immunity bears the burden of proof. Van Meter, 207 Ill. 2d at 370. By moving for a dismissal under section 2-619, the defendant concedes that the complaint is legally sufficient. Van Meter, 207 Ill. 2d at 367. The trial court must construe the pleadings and supporting documents in the light most favorable to the party opposing the motion. Van Meter, 207 Ill. 2d at 367-68. "[T]he 'affirmative matter' asserted by the defendant must be apparent on the face of the complaint; otherwise, the motion must be supported by affidavits or certain other evidentiary materials." Van Meter, 207 Ill. 2d at 377. "It is only when the governmental entities have met this burden that a plaintiff's right to recovery is barred." Van Meter, 207 Ill. 2d at 370.

The main source of governmental immunity is the Tort Immunity Act (745 ILCS 10/1-101 *et seq.* (West 2006)). See Moore v. Green, 219 Ill. 2d 470, 477, 848 N.E.2d 1015 (2006) ("The Tort Immunity Act protects local public entities and public employees from liability arising from the operation of government"). Section 4-102 of the statute provides: "Neither a local public

9

entity nor a public employee is liable for failure to *** provide police protection service or, if police protection service is provided, for failure to provide adequate police protection or service, failure to prevent the commission of crimes, failure to detect or solve crimes[] and failure to identify or apprehend criminals." 745 ILCS 10/4-102 (West 2006). Section 4-107 provides: "Neither a local public entity nor a public employee is liable for an injury caused by the failure to make an arrest." 745 ILCS 10/4-107 (West 2006). "Both sections offer absolute immunity." Moore, 219 Ill. 2d at 478. But another section limits absolute immunity. Section 2-202 of the Tort Immunity Act provides: "A public employee is not liable for his act or omission in the execution or enforcement of any law *unless such act or omission constitutes willful and wanton conduct*." (Emphasis added.) 745 ILCS 10/2-202 (West 2006).

The other statute at issue here is the Domestic Violence Act (750 ILCS 60/101 *et seq.* (West 2006)). The Act protects "any person abused by a family or household member" and "any person residing or employed at a private home or public shelter which is housing an abused family or household member." 750 ILCS 60/201(a) (West 2006). Like the Tort Immunity Act, the Domestic Violence Act makes an exception to the general rule of governmental immunity. Section 305 of the Domestic Violence Act provides: "Any act of omission or commission by any law enforcement officer acting in good faith in rendering emergency assistance or otherwise enforcing this Act shall not impose civil liability upon the law enforcement officer or his or her supervisor or employer, *unless the act is a result of willful and wanton misconduct*." (Emphasis added.) 750 ILCS 60/305 (West 2006).

Plaintiffs' first claim on appeal is that the trial court erred in finding that the absolute

immunity in sections 4-102 and 4-107 of the Tort Immunity Act (745 ILCS 10/4-102, 4-107 (West 2006)) override the exception to immunity in section 305 of the Domestic Violence Act. Plaintiffs rely on Calloway v. Kinkelaar, 168 Ill. 2d 312, 659 N.E.2d 1322 (1995), and Moore, 219 Ill. 2d 470.

Moore is dispositive of defendants' claims of absolute immunity. The supreme court in Moore established that section 305 of the Domestic Violence Act (750 ILCS 60/305 (West 2006)), not section 4-102 or 4-107 of the Tort Immunity Act (745 ILCS 10/4-102, 4-107 (West 2002)), applies when a plaintiff alleges police officers engaged in willful and wanton conduct by failing to aid a victim of domestic violence. Moore, 219 Ill. 2d at 474. The court noted that the Domestic Violence Act is to be liberally construed to fulfill its underlying purposes. Moore, 219 Ill. 2d at 480. These purposes appear in section 102 of the Act and include: (1) recognizing domestic violence as a serious crime; (2) recognizing the vulnerability of disabled adults; (3) recognizing that the legal system historically has been ineffective in dealing with family violence and that abusers have escaped prosecution and financial liability in the past; (4) supporting domestic violence victims by "diligently enforcing court orders"; (5) supporting law enforcement officers to provide victims with "immediate, effective assistance and protection"; and (6) expanding civil and criminal remedies for victims. 750 ILCS 60/102 (West 2002); Moore, 219 Ill. 2d at 480-81.

The supreme court noted that the Domestic Violence Act goes beyond helping victims in that it instructs police departments and their officers on how to enforce protective orders. Moore, 219 Ill. 2d at 481-82. When a law enforcement officer "has reason to believe that a person has

been abused *** the officer shall immediately use all reasonable means to prevent further abuse." 750 ILCS 60/304(a) (West 2006). The officer must arrest the abuser where appropriate. 750 ILCS 60/304(a)(1) (West 2006). Where an officer *does not* make an arrest or instigate criminal proceedings, he or she must make a police report of the investigation and inform the victim of her right to request a criminal proceeding against her abuser. 750 ILCS 60/304(b)(1), 304(b)(2) (West 2006).

Our supreme court decided Moore in 2006 during the pendency of this litigation. The court determined that the limited immunity in section 305 of the Domestic Violence Act clearly works in concert with the requirements in section 304: "section 304 creates duties; section 305 limits civil liability for law enforcement agencies and their officers who breach these duties by willful and wanton conduct." Moore, 219 Ill. 2d at 489. The court concluded that because the phrasing in section 305 "mirrors" the limited immunity provision in section 2-202 of the Tort Immunity Act (745 ILCS 10/2-202 (West 2002)), the legislative intent of section 305 is to provide only limited, not absolute, immunity for willful and wanton conduct in a domestic violence situation. Moore, 219 Ill. 2d at 489-90.

Defendants challenge this result, arguing that under DeSmet v. County of Rock Island, 219 Ill. 2d 497, 512, 848 N.E.2d 1030 (2006), section 4-102 immunity for failure to provide police protection "applies in the first instance, rather than some other statutory provision *of the Tort Immunity Act*." (Emphasis added.) What defendants fail to mention is that DeSmet also acknowledges that immunity may be limited by provisions *outside* the Tort Immunity Act: "we recognize that there may be additional exceptions to the application of section 4-102 where a

12

legislative enactment identifies a specially protected class of individuals to whom statutorily mandated duties are owed (see [Moore, 219 Ill. 2d at 487-91]); Calloway, 168 Ill. 2d at 323-24." DeSmet, 219 Ill. 2d at 521-22. While the circumstances in DeSmet were such that section 4-102 immunity prevailed, the court reaffirmed its holding in Moore that section 305 of the Domestic Violence Act is an exception to absolute immunity. DeSmet, 219 Ill. 2d at 521-22.

We turn to plaintiffs' contention that their complaint should not have been dismissed because it sufficiently alleged willful and wanton acts and omissions by defendants in enforcing the Domestic Violence Act. In establishing a right of civil action under the Domestic Violence Act, our supreme court in Calloway stated that an injured person must show: "that he or she is a person in need of protection under the Act, the statutory law enforcement duties owed to him or her were breached by willful and wanton acts or omissions of law enforcement officers, and such conduct proximately caused [the] plaintiff's injuries." Calloway, 168 Ill. 2d at 324. The Act imposes a duty on law enforcement officials "to promptly undertake all reasonable steps to assist *** a 'person protected' by the Act, when they [learn] of *** threatening conduct and ongoing violation of the order of protection." Calloway, 168 Ill. 2d at 326.

In Calloway, as here, the defendants sought dismissal of the complaint under section 2-619 of the Code (735 ILCS 5/2-619 (West 1992)). Calloway, 168 Ill. 2d at 317. The question there was whether the plaintiff sufficiently alleged the willful and wanton violation of the officers' statutory duties as stated in the Domestic Violence Act. Calloway, 168 Ill. 2d at 317-18. The court had to determine "whether the well-pleaded allegations of [the] plaintiff's complaint [were] actionable under Illinois law." Calloway, 168 Ill. 2d at 318. Our task is the same—to decide

13

1-06-2842

whether the well-pled allegations in this complaint are actionable under the Domestic Violence Act.

The definition of willful and wanton conduct used in Illinois appears in the Illinois Pattern Jury Instructions, Civil, No. 14.01 (3d ed. 1993) (IPI Civil 3d No. 14.01). Murray v. Chicago Youth Center, 224 Ill. 2d 213, 241, 864 N.E.2d 176 (2007). This instruction provides: "When I use the expression 'willful and wanton conduct' I mean a course of action which [shows actual or deliberate intention to harm or which, if not intentional,] shows an utter indifference to or conscious disregard for [a person's own safety] [and] [the safety of others]." IPI Civil 3d No. 14.01.

In general, a plaintiff's allegation that the defendant breached a legal duty by willful and wanton conduct presents a question of fact for a jury to determine at trial. Calloway, 168 Ill. 2d at 326; Murray, 224 Ill. 2d at 245. It is well established that "[w]hether the defendant was guilty of willful or wanton conduct *** [is] purely a question of fact for the jury to determine from all the evidence introduced by the respective parties bearing upon that point in the case, and it [is] not the province of the court to inform the jury that some particular fact in the case was conclusive of that question." Chicago, Burlington & Quincy R.R. Co. v. Murowski, 179 Ill. 77, 80-81, 53 N.E. 572 (1899). Accord Illinois Central R.R. Co. v. Leiner, 202 Ill. 624, 629, 67 N.E. 398 (1903); Bernier v. Illinois Central R.R. Co., 296 Ill. 464, 470, 129 N.E. 747 (1921); Schneiderman v. Interstate Transit Lines, Inc., 394 Ill. 569, 583, 69 N.E.2d 293 (1946). Questions of fact should be withheld from the jury "only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors

14

movant that no contrary verdict based on that evidence could ever stand." Pedrick v. Peoria & Eastern R.R. Co., 37 Ill. 2d 494, 510, 229 N.E.2d 504 (1967). "[E]ach situation will differ," but where the facts in a complaint are sufficient, it will survive a motion to dismiss. Calloway, 168 Ill. 2d at 326.

This court in Sneed v. Howell, 306 Ill. App. 3d 1149, 1159, 716 N.E.2d 336 (1999), considered whether the plaintiff alleged sufficient claims of willful and wanton conduct to avoid an early-stage dismissal under section 2-615 or 2-619 of the Code (735 ILCS 5/2-615, 2-619 (West 2006)). The court concluded that the plaintiff's complaint should have survived a motion to dismiss under section 2-615 of the Code. Sneed, 306 Ill. App. 3d at 1159. The factual basis for the plaintiff's claim stated that despite a protective order, the victim's former husband continued to watch and harass her. Sneed, 306 Ill. App. 3d at 1152. On June 23 and 24, 1996, and again on July 1, 1996, the victim notified the police that her former husband was violating the protective order. On July 4, 1996, the former husband accosted the victim at her workplace, brandished a gun, forced her into his car and shot her to death. Sneed, 306 Ill. App. 3d at 1152.

The complaint alleged: "the City's police department negligently violated the Domestic Violence Act by willfully and wantonly taking no action to inhibit [the former husband's] repeated violations of the *** protection order." Sneed, 306 Ill. App. 3d at 1153. The trial court dismissed the willful and wanton counts against the city and we reversed. Sneed, 306 Ill. App. 3d at 1153. We stated:

> "The complaint sufficiently alleges facts that could result in a
>
> determination of willful and wanton conduct on the part of the City's police. The

15

complaint states repeated instances where decedent reported [her former husband] abusing her. Decedent took the proper steps to protect herself by obtaining a plenary order of protection. After having taken the proper steps to establish herself as a person in special need of protection, she again reported repeated stalking on the part of [her former husband]. She even had an eyewitness corroborate her claims of [her former husband] harassing her. Considering the requirements imposed by the Domestic Violence Act, and the holding in [Calloway, 168 Ill. 2d at 326], *** the amended complaint sufficiently pled facts constituting willful and wanton action." Sneed, 306 Ill. App. 3d at 1159.

We reach the same conclusion here. The holding in Moore prevents defendants from establishing that absolute immunity defeats the complaint as a matter of law. Moore, 219 Ill. 2d at 489-90. Defendants have not supported the factual contentions in their motion with affidavits or other evidence. See Van Meter, 207 Ill. 2d at 377 (where an affirmative defense does not appear on the face of the complaint, a section 2-619 motion to dismiss must be supported by affidavits or other evidence). This means that if the complaint sufficiently alleges facts that could be deemed willful and wanton conduct, this complaint must survive defendants' motion to dismiss. See Sneed, 306 Ill. App. 3d at 1159.

The complaint alleged that the defendants knew Mary had a protective order against Zirko. Defendants in their motion to dismiss did not dispute this claim or provide affidavits or other materials to refute it. Nor did defendants deny that Palatine officers went to Wilmette,

16

1-06-2842

where they obtained police reports and learned of a long history of domestic violence. The complaint alleged that the officers had probable cause to arrest Zirko. Although defendants argued that they lacked probable cause, they provided no supporting materials to show what evidence from their investigation ruled out probable cause. While it is undisputed that the officers brought Zirko to a police station and spoke with his attorney, defendants did not come forward with the information they considered in deciding not to arrest Zirko. There remains a genuine question of material fact as to whether defendants had probable cause to arrest Zirko. See, for example, People v. Garvin, 219 Ill. 2d 104, 115-16, 847 N.E.2d 82 (2006), citing Maryland v. Pringle, 540 U.S. 366, 371, 157 L. Ed. 2d 769, 775, 124 S. Ct. 795, 800 (2003) (whether probable cause exists depends on "the totality of the facts and circumstances, as viewed by an objectively reasonable officer").

The complaint also alleged that defendants' conduct was willful and wanton when they promised Mary 24-hour protection but failed to protect her, despite knowing that her long-time abuser had taken specific steps toward murdering her. Defendants argued that the promise had expired by the date of the murders, but they did not present the affidavits of the officers who allegedly made the promise to show a time limitation was intended or conveyed to Mary. Defendants did not assert that Mary was told when the protection was no longer available to her. There are genuine issues of material fact as to the circumstances of promise. While opinions from out-of-state courts have no authority in Illinois (Paulsen v. Cochran, 356 Ill. App. 3d 354, 363, 826 N.E.2d 526 (2005)), at least one state has considered the effect of a promise of protection in a domestic violence situation. See Cockerham-Ellerbee v. Town of Jonesville, 176 N.C. App.

17

372, 378-79, 626 S.E.2d 685, 690 (2006), where the North Carolina appellate court found the plaintiff's allegation that police officers made specific promises of protection was sufficient to preclude the early-stage dismissal of a complaint on the grounds of governmental immunity.

The complaint here alleged that defendants were willful and wanton in failing to conduct a sufficient investigation of Zirko's murder plan. Defendants in their motion to dismiss did not describe the extent of their investigation. There is a genuine issue of material fact as to whether the investigation was sufficient to avoid a finding of willful and wanton conduct. The complaint alleges that defendants willfully and wantonly failed to respond to Mary's repeated calls for help up to and including the day of the murders. Neither victim can report the dates, times and subjects of these alleged calls, but police department call records might refute this claim. Defendants did not reference or produce such records to support their motion. There is a genuine issue of material fact as to whether Mary called defendants on the day of the murders as plaintiffs alleged in their complaint: "From October 22, 2004 to December 13, 2004, Mary Lacey repeatedly called the Palatine and Glenview police departments." Because there were genuine issues of material fact as to willful and wanton conduct, the trial court should not have dismissed this cause on a section 2-619 motion. 735 ILCS 5/2-619 (West 2006). Defendants had the burden of proof in establishing their immunity. Van Meter, 207 Ill. 2d at 370. They failed to do so.

Defendants' main defense is that the officers were not enforcing the Domestic Violence Act at the time of the alleged willful and wanton conduct. See Calloway, 168 Ill. 2d at 326 ("the legislature unambiguously intended to limit the liability of law enforcement personnel to willful

and wanton acts or omissions in *enforcing* the Act" (emphasis added)). Defendants argue that section 305 of the Domestic Violence Act, like the similarly worded section 2-202 of the Tort Immunity Act, should be interpreted as providing immunity only where a public employee is negligent while actually engaged in the enforcement of a law, citing Zimmerman v. Village of Skokie, 183 Ill. 2d 30, 57, 697 N.E.2d 699 (1998).

As we have said, section 305 of the Domestic Violence Act mirrors section 2-202 of the Tort Immunity Act (745 ILCS 10/2-202 (West 2006)). See Moore, 219 Ill. 2d at 489-90. It is well established in cases that construe section 2-202 that "[t]he immunity granted a public employee for his negligent acts extends only to the act or omission done while in the *actual execution or enforcement of a law* and not to every act or omission done while on duty as a public employee." (Emphasis added.) Arnolt v. City of Highland Park, 52 Ill. 2d 27, 33, 282 N.E.2d 144 (1972). Whether a police officer is engaged in the execution or enforcement of a law "is a factual determination which must, in every case, be made in the light of the circumstances involved." Arnolt, 52 Ill. 2d at 35. Accord Aikens v. Morris, 145 Ill. 2d 273, 286, 583 N.E.2d 487 (1991); Carter v. Du Page County Sheriff, 304 Ill. App. 3d 443, 452, 710 N.E.2d 1263 (1999). Enforcement of the law most often is viewed as a " 'course of conduct'." Aikens, 145 Ill. 2d at 283, quoting Fitzpatrick v. City of Chicago, 112 Ill. 2d 211, 221, 492 N.E.2d 1292 (1986).

The question of whether officers were executing or enforcing the law may be resolved by the court as a matter of law where the facts alleged support only one conclusion. Sanders v. City of Chicago, 306 Ill. App. 3d 356, 361, 714 N.E.2d 547 (1999). For example, a police officer

responding to an emergency is considered to be executing or enforcing a law. Morris v. City of Chicago, 130 Ill. App. 3d 740, 744, 474 N.E.2d 1274 (1985). But "a police officer does not have to be engaged in an emergency response in order for section 2-202 immunity to apply." Carter, 304 Ill. App. 3d at 452-53. It is error for a trial court to determine as a matter of law that a police officer was or was not enforcing or executing a law where questions of fact surround the officer's activities at a particular time. Carter, 304 Ill. App. 3d at 454.

Here, plaintiffs alleged that defendants were enforcing the Act because they knew Zirko was in violation of a protective order in effect at the time of their investigation of the murder-for-hire plot. Defendants argue that the officers were investigating a murder-for-hire plot, not a violation of the Domestic Violence Act. But defendants have not cited statutes, cases or even departmental policies on solicitation of murder-for-hire crimes that required them to provide services to Mary as they did. They informed Mary of Zirko's plot, met with her at the police station and at her home and promised her protection. These actions are consistent with the statutory scheme set forth in section 304 of the Domestic Violence Act, including the immediate use of all reasonable means to prevent abuse and, possibly, the arrest of the abuser. 750 ILCS 60/304 (West 1996). There is a genuine issue of material fact as to which laws, if any, defendants were enforcing when they contacted Mary and investigated Zirko in October 2004.

Defendants argue the officers' conduct was not the proximate cause of plaintiffs' injuries because of the time lapse between their contact with Mary in October 2004 and the murders in December 2004. They contend that the time lapse, along with their closure of the murder-for-hire investigation, establish as a matter of law that they were not enforcing the Domestic Violence Act

20

when the murders occurred. Defendants rely on Sanders, 306 Ill. App. 3d 356, 714 N.E.2d 547, among others, to argue that even small changes in circumstances from case to case can result in differing conclusions as to whether an officer was continuing to enforce or had ceased to be enforcing the law. In Sanders, the court determined that an officer was not enforcing the law and was not entitled to immunity under section 2-202 of the Tort Immunity Act when he had a car accident about one minute after a dispatcher told him the emergency to which he was responding was resolved. Sanders, 306 Ill. App. 3d at 361.

It is true that most Illinois domestic violence cases involve a 911 call to the police by or on behalf of a victim and an officer's cursory response or failure to respond within minutes or, at most, hours of the call. See Moore, 219 Ill. 2d at 474 (officers responded to the victim's 911 call but drove away without exiting their car about five minutes before the victim was shot); Calloway, 168 Ill. 2d at 315-17 (over the course of a three-hour period, the victim repeatedly called the sheriff's office to report her husband's violation of a protective order, but no officers responded and the dispatcher told her to call her attorney). In contrast, the court in Sneed found that the complaint sufficiently alleged facts that could result in a finding of willful and wanton conduct by police officers despite the fact that about one week had elapsed between the victim's first contact with the police and the incident that prompted the complaint. Sneed, 306 Ill. App. 3d at 1152.

We cannot say as a matter of law that the police were not enforcing the Domestic Violence Act on December 13, 2004. The facts as alleged in the complaint do not rule out defendants' conduct as the proximate cause of the deaths.

Finally, we reach plaintiffs' contention that the trial court improperly dismissed Kolbasky's claims as to Ballog. Plaintiffs argue that Ballog was a protected person under section 201 of the Domestic Violence Act (750 ILCS 60/201 (West 2006)), either because she was a member of Mary's family or because she was temporarily residing at Mary's house, or both. Defendants argue that Ballog was not a protected person because she was not named in Mary's protective order.

As a threshold matter, a plaintiff invoking the Domestic Violence Act must show that the injured person was someone in need of protection under the Act. Calloway, 168 Ill. 2d at 324. We do not believe Ballog qualifies as a protected person. Defendants are correct that Ballog was not named on the protective order. Plaintiffs' assertion that the order implicitly covered members of Mary's family is not supported by the evidence. The protective order does not contain a broad "and family" provision. Instead, it names specific persons and Ballog is not one of them.

Plaintiffs' allegation that Ballog was protected because she was living temporarily with Mary also is unavailing. Section 201(a)(iv) of the Domestic Violence Act provides that a person residing at a private home that is housing an abused family or household member is protected. 750 ILCS 60/201(a)(iv) (West 2006). Plaintiffs do not allege and the record does not show that Ballog lived with or provided housing for Mary. Plaintiffs argue that Ballog should be considered a protected person as a member of the general public. Plaintiffs contend: "Like section 2-202 [of the Tort Immunity Act], section 305 [of the Domestic Violence Act] should be read to include a duty to the general public for any willful and wanton [conduct] with respect to the Domestic Violence Act."

Statutory language "must be afforded its plain, ordinary, popularly understood meaning" and, unless such language is ambiguous, a "statute must be applied as written without resorting to other aids of construction." Moore, 219 Ill. 2d at 479. Section 201 of the Domestic Violence Act identifies the people covered under the Act. 750 ILCS 60/201 (West 2006). The general public is not named. Ballog, as a member of the general public, was not protected under the plain language of the Act.

We conclude that: (1) the Tort Immunity Act does not override the Domestic Violence Act; (2) plaintiffs' allegations of defendants' willful and wanton conduct in the enforcement of the Domestic Violence Act were sufficient to survive defendants' motion to dismiss; and (3) Ballog was not a protected person under the Act. We reverse the judgment of the trial court dismissing Susan Lacey's claims and affirm the judgment dismissing Kolbasky's claims. We remand this cause for further proceedings.

Affirmed in part and reversed in part; cause remanded.

GARCIA and R.E. GORDON, JJ., concur.